**Billy Keith McGREGOR, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–89–503.

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1994.

Order Denying Rehearing and Directing Issuance of Mandate Dec. 6, 1994.

Diane Clowdus, Irven Box, Oklahoma City, for defendant at trial.

William N. Peterson, Dist. Atty., Linda Evans, Asst. Dist. Atty., Wewoka, for the State at trial.

William H. Luker, Asst. Appellate Indigent Defender, Norman, for appellant on appeal.

Susan Brimer Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

CHAPEL, Judge.

Billy Keith McGregor was tried by jury and convicted of First Degree Murder in violation of 21 O.S.Supp. 1982, § 701.7(A), in the District Court of Seminole County before the Honorable Gregg M. Smith, Case No. CRF–89–38. During the sentencing phase of trial, the jury found the existence of two aggravating circumstances and sentenced McGregor to death.[1] McGregor has perfected his appeal of this conviction. He raises

---

1. This is McGregor's second trial. He was first convicted in Hughes County District Court CRF–83–58. On appeal, the case was reversed and remanded to determine whether McGregor had been entitled to a court-appointed psychiatrist in light of *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). *McGregor v. State,* 728 P.2d 846 (Okl.Cr.1986). This Court then directed that the evidentiary hearing be *ex parte. McGregor v. State,* 733 P.2d 416 (Okl.Cr.1987). After the evidentiary hearing, this Court reversed

twenty-three propositions in his petition in error.

On May 13, 1983, McGregor began boarding with Virgie Plumb, an older woman. Plumb had broken her hip in January, 1983, had a steel prosthesis in her left hip and often used a walker. On May 22, a neighbor saw McGregor and Plumb leave the house. McGregor was driving Plumb's car. This was the last time anyone saw Plumb, whose decomposed body was later found in a wooded area near Wewoka. No physical evidence links McGregor to the crime. During repeated custodial and non-custodial questioning over the course of a month, he gave police several stories and then gave several confessions.[2] McGregor said that on May 22 he and Plumb were driving to Lake Eufala. On the way, they began to argue and Plumb said she would evict McGregor. He pulled over and began to choke her. When passing motorists stopped to help, McGregor told them she was drunk. While Plumb gasped for air, McGregor drove to a side road, stopped and walked her into the woods.[3] He tied her to a tree and told her he needed time to get out of the area, and she begged him not to leave and began to cry. As he left, they heard motorcycles nearby and Plumb cried out for help. McGregor put his hands over her mouth, she bit him, he hit her on the head with a rock, and she screamed. She was still alive when he hit her again with a larger rock and fractured her skull. McGregor's June 22 confession directed officers to Plumb's remains.

## PRETRIAL ISSUES

■ McGregor argues in his tenth proposition that the trial court committed reversible error at his competency trial when it allowed his prison unit manager, Cook, to give an opinion as to his mental capabilities and competency to stand trial. Lay witnesses can testify about their observations of defendants if those observations are reasonably proximate in time to the proceedings.[4] This Court will not disturb the judgment if any competent evidence reasonably supports the findings of the trier of fact.[5] Lay witnesses can also give an opinion as to whether a defendant knew right from wrong at the time of crime if the opinion is rationally based on witness perception and helpful to a clear understanding of the testimony or determination of the fact in issue.[6] Cook testified as to his observations of McGregor over a period of time while incarcerated. If this were error, it would be harmless: the jury could have disregarded this testimony and still found the State showed competency from the psychiatric testimony presented. Dr. Gentry testified that McGregor was drug competent, i.e., was competent when medicated, and Eastern State Hospital medical records indicated McGregor was drug competent with schizophrenia in remission.

■ McGregor claims in proposition eleven that he was deprived of his right to confrontation by the admission of hearsay testimony in his competency trial. This Court will not disturb a judgment of competency if

and remanded for a new trial, *McGregor v. State*, 754 P.2d 1216 (Okl.Cr.1988).

2. The day after Plumb's disappearance, McGregor tried unsuccessfully to cash two checks she had written him. Police first learned Plumb was missing when McGregor complained to them about the bad checks. The house was searched, Plumb's children took possession of it, and McGregor was evicted on May 24.

3. In one statement, McGregor said that as they entered the woods, Plumb offered him sex if he would "forget about this". He refused. He said that when he left, she did not have on her top

and possibly did not have on her panties. The physical condition of Plumb's clothing at the scene partly corroborated his statement.

4. *Campbell v. State*, 636 P.2d 352, 356 (Okl.Cr. 1981), cert. denied, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983).

5. *Miller v. State*, 751 P.2d 733, 738 (Okl.Cr. 1988).

6. *Yates v. State*, 703 P.2d 197, 199 (Okl.Cr.1985).

any competent evidence reasonably supports the findings of the trier of fact.[7] McGregor's objection to the admission of testimony of other doctors from Eastern State Hospital records was overruled under the business records exception (although the records themselves were not admitted in evidence). The witness, Dr. Lanier, was not from Eastern State Hospital, had no actual knowledge of the records, and does not appear to have been qualified to introduce them. Admission of this testimony may have been error. However, when we examine the evidence as a whole we find the error harmless beyond a reasonable doubt and that the jury would have found McGregor competent.

■ In his fourth proposition McGregor claims the State withheld contents of exculpatory evidence, including a taped statement he made to a citizen, Hamilton, acting as a police agent on the day of his arrest, and statements he made purporting to implicate him in other crimes. On April 19, 1994 we remanded the case for an evidentiary hearing on the issue of taped statements. On remand, the trial court concluded that no tapes were withheld in violation of any discovery orders or *Brady v. Maryland.*[8] A review of the record reveals no abuse of discretion and we will not disturb this ruling.

## ISSUES RELATING TO JURY SELECTION

■ In proposition thirteen McGregor argues the trial court improperly questioned prospective jurors concerning their ability to impose the death penalty. The trial court erroneously asked each prospective juror if he or she could impose the death penalty without doing violence to his or her conscience; the correct question is whether the jurors' views would prevent or substantially impair the performance of their duties.[9] As McGregor did not object during voir dire this Court will review only for plain error.[10] The trial court very clearly asked the jurors if their views on the imposition of death, life without parole, or life would impede their duties. A review of the record, including all questions asked by the court, the State and the defendant, shows that the correct standard was substantially satisfied.[11]

■ The two jurors who were excused both clearly stated they could not impose the death penalty under any circumstances. Their excusal was not only proper, but mandated under *Witherspoon v. Illinois.*[12]

## ISSUES RELATING TO GUILT AND INNOCENCE

■ In his first proposition McGregor argues that the State failed to prove his guilt beyond a reasonable doubt. This Court will not disturb a verdict where, reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[13] We will accept reasonable inferences and credibility choices that tend to support the trier of fact.[14] In cases raising sanity at the time of the offense as a defense, this Court will not interfere with a verdict on insufficient evidence grounds unless there is no competent evi-

7. *Miller,* 751 P.2d at 738.

8. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

9. *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851 (1985).

10. *Garcia v. State,* 734 P.2d 820, 824 (Okl.Cr. 1987).

11. *Salazar v. State,* 852 P.2d 729, 732 (Okl.Cr. 1993); *Battenfield v. State,* 816 P.2d 555, 558 (Okl.Cr.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992).

12. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Hooks v. State,* 862 P.2d 1273, 1277 (Okl.Cr.1993).

13. *Spuehler v. State,* 709 P.2d 202, 203–204 (Okl. Cr.1985).

14. *Maxwell v. State,* 742 P.2d 1165, 1169 (Okl.Cr. 1987).

dence in the record to support the verdict.[15]

■ Oklahoma law creates a presumption of sanity in insanity defense cases. The defense has the initial burden to raise a reasonable doubt as to sanity at the time of the crime. If this burden is met, the State then has the burden to prove sanity at the time of the crime beyond a reasonable doubt.[16] Whether the State has met its burden is a question of fact for the jury.[17] Lay opinion is admissible to prove sanity or insanity at the time of the crime; the law makes no distinction between expert testimony and other types of testimony, and weighing that evidence is a jury function. A jury can disregard entirely the testimony of psychiatric or medical experts and find sanity from testimony of lay witnesses alone.[18]

Two psychiatrists reviewed medical records, briefly examined McGregor, and testified that McGregor had a long history of mental illness. Neither would state whether McGregor knew right from wrong at the time of the crime, but both gave the opinion that he probably did not understand the nature or consequences of his acts. A State psychologist who had examined McGregor in earlier competency proceedings testified that McGregor was mentally ill but "drug competent" and had been on medication, according to records, for many years. McGregor's family also testified as to the continuing and longstanding nature of his mental illness. A jury could find either that this evidence raised a reasonable doubt of sanity at the time of the crime or that it was relevant only to McGregor's general sanity.

■ The State relied on lay witnesses who saw McGregor on the days immediately surrounding the crime. They testified that they noticed nothing unusual and that McGregor seemed as he always had. These witnesses included neighbors who saw McGregor the day of the crime, a woman who spoke with him that evening, store clerks who waited on McGregor the next day, his ex-girlfriend who was with him the following week, and officers who talked with McGregor when he reported the bad checks and Plumb's disappearance. McGregor's sister admitted that he seemed normal when he visited her the week after the crime. The jury could find from this testimony that the State met its burden of proving McGregor sane beyond a reasonable doubt at the time of the crime.

■ McGregor claims that the evidence must be insufficient because the jury's general verdict of sanity does not indicate the basis for their decision. When two alternative theories are present, if evidence supports both alternatives, the verdict is sufficient and the jury need not state which alternative it used.[19] As the jury could have found either that McGregor did not raise a reasonable doubt as to sanity, or that the State met its subsequent burden, the evidence presented is sufficient to support the verdict.

■ McGregor argues in proposition two that his statements should not have been

15. *Ballou v. State*, 694 P.2d 949, 951–52 (Okl.Cr. 1985); *Smith v. State*, 646 P.2d 1285, 1287 (Okl. Cr.1982); *Bowers v. State*, 648 P.2d 835, 836 (Okl.Cr.1982).

16. See, e.g., *Brewer v. State*, 718 P.2d 354, 360–61 (Okl.Cr.1986), cert. denied 479 U.S. 870, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986).

17. *Pugh v. State*, 781 P.2d 843 (Okl.Cr.1989).

18. See, e.g., *Lamb v. State*, 767 P.2d 887, 891 (Okl.Cr.1988); *Yates*, 703 P.2d at 199–200; *Smith*, 646 P.2d at 1287.

19. *Munson v. State*, 758 P.2d 324, 334 (Okl.Cr. 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *James v. State*, 637 P.2d 862, 865–66 (Okl.Cr.1981).

The conviction cannot stand if only one ground supports it and a reviewing court is uncertain or it is impossible to tell which ground the jury selected. *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

admitted because they were involuntary.[20] McGregor first argues that his May 24, 1983 statements were improperly admitted because they were made without *Miranda* warnings. That evening McGregor went to the police station to report Plumb's bad checks. When he told officers she had disappeared they became alarmed and suspicious. He accompanied them to Plumb's house twice that evening, retrieved his belongings at the request of the family and left. These comings and goings were apparently voluntary, as were his responses to police questioning.[21] *Miranda* warnings are required only when a person has been placed under formal arrest or has suffered a restraint of movement comparable to formal arrest.[22] The record does not indicate the police restrained McGregor in any way, therefore *Miranda* warnings were not required to take his statements.

■ McGregor argues that the five statements he made to Agent Brewer [23] were the

products of mental coercion. Each statement is facially valid and executed with what appears to be a valid *Miranda* waiver, and nothing in the record indicates coercion. The question is whether McGregor's waivers were voluntary, knowing, and intelligent, given his mental state. Mental state is a factor to consider in determining the admissibility of confessions.[24] Evidence indicates (1) that McGregor is mentally ill but competent when medicated with antipsychotic drugs such as Mellaril, Haldol and Thorazine, and (2) that he has been on some sort of psychiatric medication continuously since his early teens. McGregor claims he was probably not taking his medication at the time of the crime [25] and certainly not receiving medication in jail when he made the statements to Brewer.

McGregor alleges two forms of coercion. First he claims that officers deliberately withheld his medication, implying that they did this to force a confession.[26] The only trial evidence supporting this claim is McGregor's own testimony in the *Jackson–*

**20.** When evidence taken *in camera* is sufficient to support a trial court's ruling that a defendant's statements are voluntary and admissible, that ruling will not be disturbed on appeal. *Turner v. State,* 803 P.2d 1152, 1158 (Okl.Cr.1990), cert. denied, 501 U.S. 1233, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991); *McAdams v. State,* 763 P.2d 391, 393 (Okl.Cr.1988). In McGregor's *Jackson–Denno* hearing, the court heard from three police officers and McGregor. The police officers were present at questioning and observed McGregor waive his *Miranda* rights and give each statement. McGregor said that he was not given his medication before questioning, he was suffering from nicotine withdrawal and "would do anything for a cigarette", and that he was offered cigarettes in exchange for statements. Evidence supported the trial court's ruling that McGregor's statements were voluntary. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) established a defendant's right to an *in camera* hearing on the voluntariness of his confession.

**21.** One officer testified that he suspected McGregor when he learned of Plumb's disappearance, but he did not communicate this to McGregor.

**22.** *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Crawford v. State,* 840 P.2d 627, 635 (Okl.Cr.1992).

**23.** These were given on May 26, May 31, June 22, June 23, and July 8, 1983. The last four

contained admissions of involvement or were confessions. A sixth statement, given on August 23, 1983, was not used at trial.

**24.** *Fikes v. Alabama,* 352 U.S. 191, 196–198, 77 S.Ct. 281, 284–85, 1 L.Ed.2d 246, 250–51 (1957); *Townsend v. Sain,* 372 U.S. 293, 307–309, 83 S.Ct. 745, 754–55, 9 L.Ed.2d 770, 782–83 (1963), overruled on other grounds, *Keeney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

**25.** One psychiatrist testified that, in his opinion, McGregor was not taking his medication at the time of the crime. Lay witnesses testified they were unaware he was on medication. His family stated that he was supposed to be on medication but they did not know if he was taking it. Out of the jury's presence, McGregor testified that he was on some unspecified medication in 1983; that he tried to take the medication but sometimes forgot to take it; and that he ran out of the medication while he was living in Wewoka and did not refill the prescription because he could not afford it.

**26.** This argument is rebutted by the fact that officers did not give McGregor his medication even after his series of very detailed and cooperative confessions.

*Denno* hearing, which the jury did not hear. He said that when he was arrested he asked Sheriff Holt to get his pill bottle, with the doctor's name and prescription, off the dashboard of his truck but Holt refused, and that he was not taking medication while in custody at the time of the statements. Holt did not recall any conversations regarding medication. No State witness knew whether McGregor was medicated while in jail.[27]

McGregor also claims that officers coerced his statements by withholding cigarettes, apparently claiming officers combined the jail no-smoking policy with offers to give him cigarettes for statements. He concedes that the jail's long-standing no-smoking policy was not directed specifically at him. Out of the jury's presence McGregor testified he is a heavy smoker and that officers let him smoke when he gave statements. The officers either had no knowledge of this or denied using cigarettes to get statements. Even assuming McGregor's claim to be true, nothing suggests and the record does not support the argument that this police activity rises to the level of coercion.

■■■■ Even if McGregor was insane, his confession is voluntary absent actual police coercion; police must take advantage of his alleged mental state to obtain his statement.[28] *Connelly* may be distinguished in cases where the question is whether a defendant's waiver was knowing and intelligent; mental state is also a factor to consider in those cases, and, under the "exercise of free will" line of confession cases[29] state coercion may not be necessary if a defendant's mental illness is such that he cannot understand the nature of his rights—a defendant who does not understand his rights cannot waive them.[30] Evidence established that McGregor's mental illness could affect his ability to appreciate the consequences of his acts but did not suggest that he could not understand what he did when he made these statements. Psychiatric testimony explained in detail the nature of schizophrenia, but did not establish that, solely as a result of the disease, a person cannot make a knowing and intelligent waiver of rights, or that McGregor could not make such a waiver.[31] Absent evidence of coercion, McGregor's otherwise valid waivers are voluntary and the record supports a determination that they were intelligent and knowing. Nothing in the record supports McGregor's claim of coercion.

■■■■ In his sixth proposition McGregor argues that he was deprived of a fair trial by the introduction of gruesome and repetitious photographs of Plumb's decomposed or dismembered remains. Photographs may be admitted if they are relevant and their probative value is not substantially

---

27. During McGregor's county jail incarceration no doctor examined him or prescribed medication for any behavioral problems or signs of mental instability.

28. *Colorado v. Connelly*, 479 U.S. at 167, 107 S.Ct. at 522, 93 L.Ed.2d at 484.
Even if officers know that a defendant has mental problems, a statement is not involuntary unless there is coercive state action. The propriety of state techniques should be viewed in light of what officers knew or should have known regarding a defendant's ability to comprehend. *State v. Carrillo*, 156 Ariz. 125, 750 P.2d 883, 894–95 (1988).

29. See, e.g., *Townsend*, 372 U.S. at 307, 83 S.Ct. at 754, 9 L.Ed.2d at 782.

30. *Miller v. Dugger*, 838 F.2d 1530, 1539 (11 Cir.1988), cert. denied, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988).

31. One of the testifying psychiatrists, Hans Von Brauchtisch, has submitted an affidavit dated August 12, 1991, in which he says he could have testified about McGregor's ability to execute a valid *Miranda* waiver; that he has now considered the question and believes that McGregor's mental illness impaired his judgment and faculties such that he could not understand the meaning of the warnings or rationally or reasonably apprehend the consequences of warnings as they affected his case. Although we admitted this affidavit to supplement the record on appeal, this Court views with caution affidavits submitted after the close of trial and is inclined to give less weight to this type of evidence than to that presented to the jury. Court rules now prohibit such filings and this affidavit would not be admitted today.

outweighed by their potential for prejudice.[32] Photographs may, for example, depict the crime scene and the nature and location of wounds or corroborate witness testimony.[33] These photographs corroborated McGregor's confessions, medical and law enforcement testimony and the identification of the victim as Plumb. The photographs, primarily of bones and clothing strewn over grass and leaves, were neither particularly gruesome nor repetitious.

 McGregor argues in proposition seven that the trial court erred in refusing to grant his application for writ of habeas ad testificandum. A defendant has a fundamental right to compulsory process for witnesses to testify on his behalf.[34] When requesting a writ of habeas ad testificandum, a defendant must prove that the testimony is material and the witness's attendance is necessary.[35] This Court will not disturb the trial court's ruling absent an abuse of discretion. A trial court may limit witnesses who are called to prove a defendant's good character and reputation, but should exercise this discretion with caution and be governed by the importance of the testimony. Limiting such testimony is particularly appropriate on collateral issues.[36]

 McGregor wanted to call three inmates. Two would testify as to his current mental state, which would have been irrelevant to the trial proceedings. The third witness was McGregor's former cellmate in the county jail where he confessed. This witness would have (1) provided evidence of McGregor's mental state during custodial questioning and a month after the crime, (2) corroborated McGregor's testimony that he requested medication and got cigarettes, and (3) impeached the testimony of officers who denied McGregor got cigarettes or asked for medication. This testimony was material. Moreover, no other person could give this particular evidence, as no family or friends shared a cell and had constant contact with McGregor during this custodial period.[37] However, since according to the record before us no possible cigarette transactions can support a coercion claim, this testimony would have been relevant only for impeachment. In addition, the jury heard evidence that McGregor did not appear unusual when making statements, and conflicting testimony was presented regarding his use of medication. Although material, this evidence was cumulative or relevant only to impeachment, and failure to admit the evidence does not amount to an abuse of discretion.

 In proposition eight McGregor argues that Oklahoma's procedure for imposing the burden of proof in an insanity defense and Instruction 23, which sets forth that procedure for the jury, are unconstitutional and denied him a fair trial. As McGregor did not object to this jury instruction, which adequately covers the applicable law, all but plain error is waived.[38] This Court has held constitutional Oklahoma's procedure

32. 12 O.S. 1991, § 2403; *Revilla v. State*, 877 P.2d 1143, 1151 (Okl.Cr.1994); *Clayton v. State*, 840 P.2d 18, 28 (Okl.Cr.1992), cert. denied, — U.S. ——, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993).

33. *Williamson v. State*, 812 P.2d 384, 400 (Okl. Cr.1991), cert. denied, — U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992).

34. E.g., *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

35. *Henderson v. State*, 743 P.2d 1092, 1095 (Okl. Cr.1987); *Parrott v. State*, 479 P.2d 619 (Okl.Cr. 1971); *Melton v. State*, 53 Okla.Cr. 360, 12 P.2d 251, 252 (1932).

36. *Orrell v. State*, 79 Okla.Cr. 300, 154 P.2d 779, 788 (1945).

37. Contrary to the State's assertion, the trial court did not find this testimony cumulative, but did admit the affidavit and speculated that McGregor could surely find nonincarcerated witnesses subject to the court's subpoena authority. The trial court was clearly concerned with safety and logistic problems presented by prisoner transport.

38. *Ashinsky v. State*, 780 P.2d 201, 206 (Okl.Cr. 1989); *Battles v. State*, 732 P.2d 480, 482 (Okl. Cr.1987), cert. denied, 482 U.S. 917, 107 S.Ct. 3193, 96 L.Ed.2d 681 (1987).

for imposing the burden of proof in the insanity defense.[39]

■ McGregor argues in proposition nine that Instructions 21 and 28 violated his right to due process and reasonable sentencing procedures. McGregor did not object to these instructions, which required him to prove a reasonable doubt of sanity as a precondition to the jury's consideration of his mental condition in determining the voluntariness of and weight to be given his admissions and confessions.[40] However, this Court will review the proposition because the error complained of is fundamental.

■ Jury instructions are sufficient if, taken as a whole, they accurately state the applicable law.[41] The trial court did not use the standard jury instructions on admissions and confessions, OUJI–CR 810—813, but appears to have inappropriately inserted the standard for presentation of the insanity defense. This instruction is ambiguous. Read one way, the jury may have believed they could not consider McGregor's sanity as a factor in weighing his statements unless they found it met the insanity defense burden test; if the jury did not find McGregor met the test, they were wrongly precluded from considering his evidence concerning mental state at all. Read another way, however, the instruction may have inured to McGregor's benefit by imposing an extra burden on the

State to prove McGregor was sane beyond a reasonable doubt before the jury could consider his confessions. As any inaccuracy in the instructions may have benefitted McGregor there is no plain error although the instructions as given may have been inappropriately worded. The instructions neither denied McGregor a constitutional or statutory right nor went to the foundation of the case.[42]

In proposition eleven McGregor complains of the admission of hearsay testimony. Several of Plumb's statements to third parties concerning McGregor's refusal to pay rent or leave were admitted over his objection. Similar statements have been held admissible as part of the declarant's state of mind.[43]

■ In proposition twelve McGregor argues the trial court erred in overruling his motion to suppress evidence obtained from warrantless searches of his pickup and bedroom at Plumb's house. McGregor gave a facially valid search waiver for the search of his truck. Officers testified that he seemed unconcerned, alert, understood what was asked of him and agreed to the search. The record does not support any claim of police coercion in obtaining the waiver.[44]

■ Although officers had no search warrant for McGregor's bedroom at Plumb's house, Plumb's children had given their con-

**39.** *Ake v. Oklahoma,* 778 P.2d 460, 464–65 (Okl. Cr.1989); *Brewer,* 718 P.2d at 360–61; *Morris v. State,* 766 P.2d 1388, 1390 (Okl.Cr.1988).

In subproposition D, McGregor claims the instructions failed to set forth accurately the State's burden of proof. Any error in an instruction may be cured by reading the instructions as a whole. Jury instructions are sufficient if, taken as a whole, they accurately state the applicable law. *Garcia,* 734 P.2d at 823; *Nealy v. State,* 636 P.2d 378, 382 (Okl.Cr.1981). The instructions here accurately reflected that, after a doubt as to sanity was raised, the State had to prove beyond a reasonable doubt that McGregor was sane at the time of the offense.

**40.** Mental condition is a factor the jury may consider in determining the voluntariness and weight of a statement. See, e.g., *Brecheen v. State,* 732 P.2d 889, 897 (Okl.Cr.1987), cert. denied, 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 244 (1988).

**41.** *Garcia,* 734 P.2d at 823; *Nealy,* 636 P.2d at 382.

**42.** *Fontenot v. State,* 881 P.2d 69, 85 (Okl.Cr. 1994).

**43.** 12 O.S. 1981, § 2803(3). *Williamson,* 812 P.2d at 403–404; *Lamb,* 767 P.2d at 890; *Spuehler,* 709 P.2d at 204.

**44.** *Miranda* warnings should be given before a search waiver is valid. *Case v. State,* 519 P.2d 523 (Okl.Cr.1974), cert. denied, 431 U.S. 965, 97 S.Ct. 2922, 53 L.Ed.2d 1061 (1977). It is unclear from the record whether *Miranda* warnings were given before the search waiver was obtained.

sent to the search. McGregor had a reasonable expectation of privacy in the room he rented from Plumb, and her children had neither common authority nor a sufficient relationship to the premises to allow a valid consent to search. Plumb's daughter took possession of the house after McGregor left, and would eventually have discovered the missing clock, the checkbook and odd check that resulted from the search; thus the inevitable discovery rule applies and there was no error.[45]

 McGregor argues in proposition fourteen that the trial court erred in admitting irrelevant but highly prejudicial evidence. Admission of evidence is within the court's discretion if the evidence tends to make more or less probable a material fact in issue.[46] McGregor objected to most of this evidence, but the evidence corroborates other witnesses' testimony or McGregor's statements and does not appear to be prejudicial. The record does not reflect any abuse of discretion.[47]

 In proposition fifteen McGregor argues that the trial court erred in allowing the State's hair expert, Jane Hill, to testify without qualification that hairs found at the murder scene belonged to Plumb. During direct examination, Hill clearly went outside the bounds of permissible expert testimony and said the hair was Plumb's. McGregor did not object. On cross-examination Hill admitted that hair comparison is not an exact science and that she could not state any hair came specifically from any person and could not positively identify the hairs as Plumb's, curing any error.[48]

## INEFFECTIVE ASSISTANCE OF COUNSEL

 In proposition three McGregor claims he was deprived of effective assistance of trial counsel and is being denied effective assistance of appellate counsel. The test for ineffective assistance of counsel is whether an attorney's performance is so deficient that the defendant did not have counsel as guaranteed by the Sixth Amendment, and the defense was prejudiced as a result of counsel's deficient performance by errors so serious as to deprive the defendant of a fair trial with reliable results. In death cases, there must be a reasonable probability that, absent errors, the sentencer would have concluded the balance of aggravating and mitigating circumstances did not equal a death sentence.[49] There is a strong presumption that counsel's conduct was professional, and the defendant must overcome the presumption that counsel's conduct equalled sound trial strategy. On appeal the court will (1) consider counsel's challenged conduct on the facts of the case as viewed at the time, and (2) ask whether the conduct was professionally unreasonable, and, if so, (3) will ask whether the error affected the jury's judgment.[50]

 Some witnesses were not effective, trial counsel failed to call at least one avail-

---

**45.** *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (defendant's statement about location of victim's body violated Sixth Amendment right, but Court ruled that the body would have inevitably been found and hence found no error).

**46.** *Woodruff v. State,* 846 P.2d 1124, 1136–37 (Okl.Cr.1993), cert. denied —— U.S. ——, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993); *Robison v. State,* 677 P.2d 1080, 1086 (Okl.Cr.1984), cert. denied 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984).

**47.** Agent Brewer's testimony regarding McGregor's remarks about the penitentiary had no probative value at all and was clearly prejudicial. However, McGregor's objection was sustained and the jury admonished, curing any error.

*Schultz v. State,* 811 P.2d 1322, 1329 (Okl.Cr. 1991); *Arnold v. State,* 803 P.2d 1145, 1150 (Okl.Cr.1990).

**48.** *Fox v. State,* 779 P.2d 562 (Okl.Cr.1989), cert. denied, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990) (there, as here, cross-examination exposed the hair expert's imprecise and unscientific conclusion that a person can be positively identified by hair).

**49.** *Coleman v. State,* 693 P.2d 4, 7 (Okl.Cr.1984), citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

**50.** *Miller v. State,* 751 P.2d 733, 734 (Okl.Cr. 1988).

able witness, and counsel failed to cross-examine witnesses thoroughly regarding some defense theories.[51] These errors in trial strategy do not meet the *Strickland* test. However, McGregor also claims counsel failed to utilize his available psychiatric witnesses. In a November, 1988 pretrial motion counsel deferred until trial a motion to suppress because he wanted to elicit psychiatric testimony on McGregor's competency to waive his *Miranda* rights. Dr. Hans Von Brauchitsch could have given an opinion on this subject but was not asked about it at trial and did not appear at the suppression hearing. This may have been merely oversight on counsel's part, since he obviously intended to present psychiatric testimony on this issue. On the other hand, throughout the proceedings counsel addressed McGregor's lack of funds and the expense of psychiatric experts. This could have been a strategy decision forced by lack of money.

▮ McGregor claims counsel's failure to call available witnesses with material knowledge or to utilize expert opinion on nonfrivolous, material issues was ineffective assistance. McGregor's cited cases concern situations where counsel completely fails to investigate or present available witness testimony. Additionally, the cases are distinguishable from this case. Here, counsel did not conduct a perfect defense but attempted to explore all avenues and presented a great deal of testimony. McGregor received effective assistance.[52]

## PROSECUTORIAL MISCONDUCT

▮ In proposition five McGregor argues he was deprived of his right to a fair trial and fair sentencing hearing by improper tactics, remarks and arguments of the prosecution. McGregor cites four separate categories of improper conduct. He first argues the prosecutor misstated the law on voir dire and in the second stage closing. During voir dire, the State three times told prospective jurors McGregor could walk out of the courtroom if found not guilty by reason of insanity. Although McGregor's objection was overruled the court properly instructed the jury on the verdict option of not guilty by reason of insanity at the end of the first stage. Any error has been waived because McGregor did not then object to the instruction or submit a requested instruction, and the instructions given properly covered the subject matter.[53] Also on voir dire, the prosecutor impermissibly tried to define reasonable doubt. The court overruled some of McGregor's objections and admonished the prosecutor at the bench more than once.

▮ In the second stage closing, the prosecutor argued that McGregor's unmedicated state should support an aggravator of continuing threat to society. The court sustained McGregor's objection and admonished the jury. Immediately the State did it again but McGregor did not object again. This Court does not condone the behavior, but concludes the error is harmless; McGregor was not prejudiced as the jury did not find

---

51. During the motion to suppress McGregor's statements, counsel did not effectively cross-examine state witnesses on withholding of medication or cigarettes, nor did he use his psychiatrist. During trial, the family witnesses were poorly prepared, and counsel failed to call defendant's brother. Counsel did not ask the family if they had informed officers of McGregor's mental problems. Both McGregor's father and brother submitted affidavits for this appeal in which they describe testimony they could have given had they been asked. This testimony may have been helpful to McGregor, but it either does not appear to be material or would have merely corroborated trial testimony. Although we allowed McGregor to supplement the appellate record

with the affidavits, we caution against this practice because the Court is inclined to give less weight to such evidence than that presented to a jury. Court rules now prohibit such filings and the affidavits would not be admitted today.

52. McGregor also claims counsel is unable to assist him effectively because the State has withheld evidence. Basing an ineffective assistance of counsel argument on actions of the State is inappropriate; this subject is discussed under "Pretrial Issues".

53. *Ashinsky,* 780 P.2d at 206.

continuing threat an aggravating factor.[54]

 McGregor next says that in several instances the prosecutor elicited sympathy and emphasized irrelevant evidence, evoked sympathy for the victim, or voiced personal opinions. The trial court cured any error by sustaining McGregor's objections to several of these comments and admonishing the jury.[55] McGregor failed to object to several of the statements of which he complains, and has waived all but plain error.[56] Plain error denies the accused a constitutional or statutory right, and goes to the foundation of the case.[57] Review of the comments does not reveal any plain error.

 McGregor alleges that the prosecutor made improper comments on his right to remain silent. The State did not directly comment on McGregor's right to remain silent at any time during the trial. During voir dire the State asked prospective jurors if they understood there were no eyewitnesses and whether they could convict under those circumstances. McGregor's complaint that this was a "back door" reference to his silence is inexplicable.

## ISSUES RELATING TO PUNISHMENT

 In proposition seventeen McGregor argues the trial court erred in failing to respond to the jury's question about what would happen to McGregor if he were sentenced to life without parole. McGregor did not object to the trial court's refusal to answer, therefore this Court will review only for plain error.[58] This Court recently held that a trial court is not required to explain the Oklahoma parole process in response to a similar jury question.[59]

 McGregor claims in proposition eighteen that the jury instruction on the aggravating circumstance especially heinous, atrocious, or cruel was unconstitutionally vague. McGregor did not object to this instruction at trial and has waived all but plain error. This Court has repeatedly upheld this instruction as limited to torture or serious physical abuse.[60] The jury was properly instructed and the state presented sufficient evidence of torture or serious physical abuse.

McGregor argues in proposition nineteen that the jury instruction regarding mitigation permitted jurors to ignore mitigating evidence altogether and seriously diminished the effect of the mitigating evidence presented. McGregor did not object to Instructions 7 or 8 and has waived all but plain error. The jury was instructed that they must consider aggravating circumstances, but that mitigating circumstances were those which "may be" considered as extenuating or reducing the degree of moral culpability or blame. This Court has consistently rejected any claim that this is error.[61]

54. *Arnold,* 803 P.2d at 1150.

55. *Schultz,* 811 P.2d at 1328; *Arnold,* 803 P.2d at 1150.

56. *Garcia,* 734 P.2d at 824.

57. *Fontenot,* 881 P.2d at 85; *Miller v. State,* 827 P.2d 875, 878 (Okl.Cr.1992); *West v. State,* 764 P.2d 528 (Okl.Cr.1988).

58. *Miller,* 827 P.2d at 878.

59. *Mayes v. State,* 65 O.B.J. 2245, 2261–62, —— P.2d ——, —————— (Okl.Cr.6/24/94).

I believe that the legislative intent of 21 O.S.Supp. 1987, § 701.9, which gives jurors the sentencing option of life without parole in capital cases, was clearly for jurors to consider parole in

these cases, and that it is thus appropriate for the trial court to instruct the jury on the meaning of a sentence of life without parole. See *Mayes,* 65 O.B.J. at 2268, —— P.2d at —— (Chapel, J., Dissenting). However, I yield my view to the majority.

60. *Revilla,* 877 P.2d at 1155; *Stafford v. State,* 853 P.2d 223 (Okl.Cr.1993) (Opinion on Remand); *Battenfield,* 816 P.2d at 565; *Sellers v. State,* 809 P.2d 676, 690 (Okl.Cr.1991), cert. denied, —— U.S. ——, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991); *Fox,* 779 P.2d at 576.

61. *Pickens v. State,* 850 P.2d 328, 339 (Okl.Cr. 1993), cert. denied, —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994); *Brown v. State,* 871 P.2d 56, 77 (Okl.Cr.1994); *Sellers,* 809 P.2d at 691; *Fox v. State,* 779 P.2d at 573–74.

■ In proposition twenty McGregor argues the instructions about the manner in which the jury was to weigh aggravating and mitigating circumstances set forth an improper burden of proof. McGregor did not object to this instruction and has waived all but plain error. The jury was instructed that aggravating circumstances must be proved beyond a reasonable doubt, and the death penalty would be proper if aggravators outweighed mitigating circumstances. Neither the United States Constitution nor Oklahoma law requires specific standards for balancing aggravating and mitigating circumstances.[62] Whether aggravating circumstances outweigh mitigating circumstances is a question for the jury.[63] This Court has consistently rejected this argument.[64]

■ In proposition twenty-one McGregor argues the trial court erred in failing to instruct the jury that it had the option to return a life sentence regardless of its findings respecting aggravating and mitigating circumstances. McGregor did not request such an instruction and has waived all but plain error. A life sentence may be

given notwithstanding a jury finding of aggravating circumstances which outweigh mitigating circumstances, but an instruction on this point is not required.[65] This argument has consistently been rejected by this Court.[66]

■ McGregor argues in proposition twenty-two that the trial court erred in failing to instruct the jury that its findings regarding mitigating circumstances did not have to be unanimous.[67] McGregor did not object to the instructions and has waived all but plain error. Although a jury finding of aggravating circumstances must be unanimous, under Oklahoma law a jury is not required to find mitigating circumstances unanimously. Such a requirement would be unconstitutional.[68] This Court has consistently rejected this argument.[69]

■ In proposition sixteen McGregor argues that the State presented insufficient evidence of aggravating circumstances. This Court will not disturb a verdict where, after reviewing the evidence in the light most favorable to the State, any rational trier of fact

---

**62.** *Zant v. Stephens,* 462 U.S. 862, 890, 103 S.Ct. 2733, 2749–50, 77 L.Ed.2d. 235 (1983); *Brown,* 871 P.2d at 74; *Rojem v. State,* 753 P.2d 359, 369 (Okl.Cr.1988), cert. denied, 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988).

**63.** *Johnson v. State,* 731 P.2d 993, 1004 (Okl.Cr. 1987), cert. denied, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987); *Jones v. State,* 648 P.2d 1251, 1260 (Okl.Cr.1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983).

**64.** *Malone v. State,* 876 P.2d 707, 715 (Okl.Cr. 1994); *Ellis v. State,* 867·P.2d 1289, 1301 (Okl. Cr.1994); *Trice v. State,* 853 P.2d 203, 216 (Okl. Cr.1993) cert. denied —— U.S. ——, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993).

**65.** *Parks v. State,* 651 P.2d 686, 694 (Okl.Cr. 1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983).

**66.** *Allen v. State,* 871 P.2d 79, 102 (Okl.Cr.1994); *Robedeaux v. State,* 866 P.2d 417 (Okl.Cr.1993); *Johnson,* 731 P.2d at 1003; *Fox,* 779 P.2d at 573; *Walker v. State,* 723 P.2d 273, 284 (Okl.Cr.1986), cert. denied 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

**67.** A review of the record reveals that Instructions 1—5 do not touch on unanimity require-

ments; Instruction 6 defines aggravating circumstances and requires unanimity; Instruction 7 defines mitigating circumstances and does not discuss unanimity; Instruction 8 lists specific mitigating circumstances and does not require unanimity; Instruction 9 requires the jury to unanimously find at least one aggravator then unanimously find that it outweighs any mitigator before imposing the death penalty; and Instruction 10 requires jurors to unanimously find an aggravator and reduce that finding to writing, but does not require written or unanimous findings of any mitigators. The distinctions between aggravating factors and mitigating circumstances seem clear and unambiguous.

**68.** *See McKoy v. North Carolina,* 494 U.S. 433, 437–39, 110 S.Ct. 1227, 1231–32, 108 L.Ed.2d 369 (1990).

**69.** *Pickens,* 850 P.2d at 339–40; *Woodruff,* 846 P.2d at 1148–49; *Castro v. State,* 844 P.2d 159, 176 (Okl.Cr.1992), cert. denied, —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993); *Clayton v. State,* 840 P.2d 18, 28 (Okl.Cr.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993).

could have found the essential elements of the crime beyond a reasonable doubt.[70] The jury found that the murder was especially heinous, atrocious or cruel and that the crime was committed to avoid arrest or prosecution. Evidence supported the finding that the murder was especially heinous, atrocious or cruel,[71] but does not support the jury's finding that the murder was committed to avoid arrest or prosecution.

▮▮▮▮ The aggravating circumstance that the crime was committed to avoid arrest or prosecution requires a predicate crime separate from the murder for which a defendant seeks to avoid arrest or prosecution.[72] This may require a determination of the state of mind of the defendant, which may be inferred from circumstantial evidence.[73] No direct or circumstantial evidence was presented suggesting that before or at the time of the crime McGregor was or believed himself to be in any danger of arrest or prosecution. He may have argued with Plumb, owed back rent, and faced eviction. McGregor said he told Plumb he had to get out of the area and would have someone release her, that she called out, he put his hand over her mouth, she bit him, and he hit her over the head. Nothing in that statement suggests the existence of a separate predicate crime which could support the jury finding of this aggravating circumstance. The evidence was clearly insufficient to support the aggravating circumstance that the crime was committed to avoid arrest or prosecution and it is, therefore, invalid.

▮▮▮▮ In proposition twenty-three McGregor argues that the foregoing assignments of

error require vacation of his sentence of death. Where there is no error, there is no cumulative error.[74] We find no error worthy of reversal in the propositions discussed above.

## MANDATORY SENTENCE REVIEW

In accordance with 21 O.S.Supp. 1985, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances.

Upon review of the record, we cannot say the sentence of death was imposed because the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp. 1985, § 701.13(C)(1).

▮▮▮▮ The jury was instructed on three aggravating circumstances and found the existence of two aggravating circumstances: (1) the murder was especially heinous, atrocious, or cruel; and (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. We have determined that the latter aggravator is invalid, and therefore must independently reweigh the aggravating and mitigating circumstances.

▮▮▮▮ An appellate court may reweigh aggravating circumstances on appeal, and may find an improper aggravator to be harmless error if, looking at the record, the court finds

---

70. *Maxwell,* 742 P.2d at 1169; *Spuehler,* 709 P.2d at 203–204.

71. This aggravating circumstance is limited to proof beyond a reasonable doubt that death was preceded by torture or serious physical abuse. See, e.g., *Stafford v. State,* 832 P.2d 20 (Okl.Cr. 1992) (Opinion on Remand); *Sellers v. State,* 809 P.2d at 690; *Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr.1987) (Opinion on Rehearing), cert. denied 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). McGregor stated that he first choked Plumb until she "farted" and gasped for air; that she was alive when he walked her into the woods; that she cried and yelled for help after he left her tied to a tree; and that she

screamed after he hit her with a rock the first time.

72. *Barnett v. State* 853 P.2d 226, 233 (Okl.Cr. 1993) (where defendant could not be found to have murdered victim to avoid prosecution for assault and battery of the victim).

73. *Munson,* 758 P.2d at 335; *Rojem,* 753 P.2d at 368; *Eddings v. State,* 616 P.2d 1159, 1169 (Okl. Cr.1980), reversed in part on other grounds, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

74. *Shelton v. State,* 793 P.2d 866, 877 (Okl.Cr. 1990).

that the elimination of an improper aggravator cannot affect the balance beyond a reasonable doubt.[75] This Court has held that an independent reweighing of aggravating and mitigating circumstances where one of several aggravating circumstances has been invalidated is implicit to our statutory duty to determine the factual substantiation of a verdict and validity of a death sentence.[76]

The evidence presented at trial indicated that, on May 22, 1983, a neighbor saw McGregor and Virgie Plumb, his landlady, drive away in Plumb's car. Plumb had mentioned to neighbors that McGregor was behind on his rent. During the drive, the two began to argue and Plumb told McGregor he would be evicted. He pulled the car off the road and choked Plumb until they were interrupted by passersby. While Plumb gasped for air, he drove down a side road, then walked her into the woods and tied her to a tree. Her clothing was disarranged or partially removed. As Plumb cried, McGregor told her he needed time to get out of the area, and would have someone release her. They heard motorcycles and Plumb yelled for help. McGregor put his hands over her mouth, she bit him, he hit her head with a rock, and she screamed. He then hit her head with a larger rock and her head "exploded". McGregor returned to Plumb's house, and continued to live there and drive Plumb's car until her children were notified of her disappearance two days later. During those two days, McGregor attempted to sell a clock from Plumb's home and tried to cash two bad checks Plumb had written him. On May 24, he went to the police to complain about the bad checks and reported Plumb's disappearance.

■ The jury was properly instructed that the "especially heinous, atrocious or cru-el" circumstance was proper only where death was preceded by torture or serious physical abuse.[77] This aggravator requires evidence that the victim suffered prior to death.[78] Evidence that Plumb was choked, tied to a tree, prevented from calling out, and was hit with a rock and screamed before the final blow supports the jury's finding of this aggravator.

McGregor presented an insanity defense. The arguably mitigating evidence presented during the first stage proceedings included the following. McGregor was diagnosed with mental illness (probably paranoid schizophrenia) from a very young age; he was prescribed antipsychotic medication continuously since his teens; he may have been born with brain damage and sustained head injuries as a teen; he was protective of and helpful to his disabled sister; finally, his childhood was troubled, partly as a consequence of his mental illness. Other than incorporating the first stage evidence, the State did not present evidence during the penalty phase. McGregor presented a prison guard to attest to his good behavior (on medication) in prison, and three family members who described his caring, helpful behavior as a child and family activities in which he participated.

The jury was specifically instructed to consider whether the following mitigators applied to the facts of the case: McGregor was born with brain damage; he suffered from mental illness identified as paranoid schizophrenia since childhood; he was under psychiatric treatment and prescribed antipsychotic medication since childhood; due to his mental illness in childhood and unusual body size he was ridiculed by other children; he tried to protect his sister from harm when they were children; he helped his sister by bringing things to her when she was wheel-

**75.** *Clemons v. Mississippi*, 494 U.S. 738, 752–54, 110 S.Ct. 1441, 1450–51, 108 L.Ed.2d 725 (1990); *Stafford v. State*, 853 P.2d 223 (Okl.Cr. 1993) (Opinion on Remand); *Stouffer*, 742 P.2d at 564.

**76.** *Id.*

**77.** *Stouffer*, 742 P.2d at 563; *Battenfield*, 816 P.2d at 565.

**78.** *Nguyen v. State*, 769 P.2d 167, 174 (Okl.Cr. 1988), cert. denied 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989), overruled on other grounds *Green v. State*, 862 P.2d 1271 (Okl.Cr. 1993); *Rojem*, 753 P.2d at 369; *Odum v. State*, 651 P.2d 703, 707 (Okl.Cr.1982).

chair bound; he worked in and for the church as a child and adult; he received inadequate attention as a child due to illness and other family problems; he visited and aided elderly people on a regular basis; he loved and helped his mother and father; he accompanied his father on many fishing trips while growing up; he tried as a teenager to get help for his mental problems; he arranged to be sent to a military academy because he could not cope with his peer group; he served his country in the armed forces; since his incarceration, he has been a "model inmate" in prison; moreover, the psychiatrists and psychologist believe that he presents no threat to himself or others if properly medicated. Other mitigating factors considered: his mental condition is chronic and cannot be cured; he shared his money and possessions with others; he was protective of certain people when threatened by others; he was shot four times in the head and he was severely stabbed. See Instruction No. 8.

■ This Court has reviewed the aggravating and mitigating evidence to determine the role which the invalid "purpose of avoiding or preventing lawful arrest or prosecution" aggravator played in the jury sentencing process.[79] This Court has then determined, through the reweighing process, what the jury in this case would have decided had it not considered the invalid aggravator.[80] The sentence must be reversed if this aggravator formed the basis of the jury's imposition of the death penalty.

■ After careful, independent review and consideration of the evidence as set forth above which supports the valid aggravating circumstance, as well as the evidence offered in mitigation, this Court finds the sentence of death factually substantiated and appropri-

ate. The mitigating circumstances arising from first stage evidence were all connected with McGregor's history of mental illness, and the specific mitigating factors given by Instruction No. 8 during the penalty phase referred to his mental illness, described his characteristic behavior in childhood, or listed beneficent character traits in adulthood. McGregor's second stage witnesses also testified either to his good and generous behavior in prison or to events and circumstances of his childhood. Defense counsel's closing argument concentrated on evidence of McGregor's mental illness and his good behavior while medicated. Evidence that McGregor was mentally ill was overwhelming, but that evidence did not show that McGregor's mental illness prevented him from understanding or controlling his actions on May 22, 1983. During closing argument, the prosecutor concentrated his remarks on evidence supporting the "heinous, atrocious or cruel" aggravator. Only a few sentences referred to the invalid aggravator.[81]

The evidence supporting the remaining aggravator details the violent nature of the crime and Plumb's suffering. The strongest evidence in mitigation is McGregor's longstanding mental illness. Given the substantial evidence supporting the valid aggravator, it is clear that the jury's improper consideration of the invalid aggravator did not play a significant role in its decision to sentence McGregor to death.

Finding no error warranting modification, the Judgment and Sentence of the District Court of Seminole County is **AFFIRMED.**

LUMPKIN, P.J., specially concurs.

JOHNSON, V.P.J., and LANE and STRUBHAR, JJ., concur.

LUMPKIN, Presiding Judge, specially concurring.

I concur in the Court's decision and compliment Judge Chapel on his analysis. The

**79.** See *Stringer v. Black,* 503 U.S. 222, ——, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992).

**80.** *Stringer,* 503 U.S. at ——, 112 S.Ct. at 1137; *Richmond v. Lewis,* —— U.S. ——, ——, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992); *Stafford,* 853 P.2d at 226.

**81.** The prosecutor also emphasized, over defense objection, evidence supporting a third charged aggravator, the existence of a probability that McGregor would commit criminal acts of violence that would constitute a continuing threat to society. The jury did not find this aggravator and we do not consider it here.

opinion does cautiously interpret the record as it relates to the search of Appellant's room in the victim's house after he moved out and abandoned the items which were discovered by law enforcement officers. In addition, the Court graciously analyzes the supplemental documents submitted by the Appellant for the record on appeal. These items were not a part of the record developed by the District Court proceedings either as a part of the trial of the case or pursuant to a Motion for a New Trial. Ex parte submission of evidentiary material, which has not been subject to the rigors of· examination through the truth seeking and admissibility procedures required of the trial court, should not be allowed or considered by an appellate court. The record on appeal is that formed by the record of trial. If further record should be required, it is incumbent upon an appellate court to remand to the trial court to develop that record. In this case, I find the items discovered in Appellant's room to have been abandoned, therefore Appellant does not have standing to contest the search. In addition, the ex parte material offered by the Appellant to supplement the record should not be considered as part of the record on appeal.

### ORDER DENYING PETITION FOR REHEARING AND DIRECTING ISSUANCE OF MANDATE

Billy Keith McGregor was tried by jury and convicted of First Degree Murder (21 O.S.Supp.1982, § 701.7(A)) before the Honorable Gregg M. Smith in the District Court of Seminole County in Case No. CRF–89–38. During the sentencing phase of trial, the jury found the existence of two aggravating circumstances and sentenced McGregor to death.

■ By its October 25, 1994, published opinion, this Court affirmed McGregor's convictions and sentences. McGregor is now before the Court on a Petition for Rehearing, Rule 3.14, *Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1993, Ch. 18, App. According to Rule 3.14, a Petition for Rehearing shall be filed for two reasons only:

(1) That some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or

(2) That the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument. McGregor raised two propositions in his Petition for Rehearing which fail to meet the criteria set forth in Rule 3.14. Accordingly, these propositions will not be addressed.

**IT IS THEREFORE THE ORDER OF THE COURT** that the Petition for Rehearing is **DENIED.** The Clerk of the Court is directed to issue the mandate forthwith.

**IT IS SO ORDERED.**

/s/ Gary L. Lumpkin,
GARY L. LUMPKIN,
Presiding Judge

/s/ Charles A. Johnson,
CHARLES A. JOHNSON,
Vice–Presiding Judge

/s/ James F. Lane,
JAMES F. LANE,
Judge

/s/ Charles S. Chapel,
CHARLES S. CHAPEL,
Judge

/s/ Reta M. Strubhar,
RETA M. STRUBHAR,
Judge