BRORBY, Circuit Judge.
Billy Keith McGregor appeals the denial of habeas relief, see 28 U.S.C. § 2254, from his Oklahoma first degree malice murder conviction and death sentence. We affirm.
Mr. McGregor was convicted of murdering Virgie Plumb, the widow in whose *1249 home he had been a boarder for a short period of time. The victim disappeared the evening of May 22, 1983. She was last seen by a neighbor, at 7:00 P.M. that evening, riding as a passenger in her own car, which Mr. McGregor was driving.
At 10:00 P.M. that evening, Mr. McGre-gor attempted to sell an antique clock belonging to the victim, as well as her car. The next day, he cashed a check purportedly written to him by the victim. That same day, he attempted to cash a second such check, which was rejected for insufficient funds. Two days after the victim’s disappearance, Mr. McGregor went to the police station to report that the victim had written him a bad check.
In the days immediately following the victim’s disappearance, Mr. McGregor related two different stories. He reported to several people that he had taken the victim to her brother’s home to visit. Later, he told people that he had dropped the victim off at a convenience store and that, when he went to pick her up, she was gone. After a number of interviews with police, Mr. McGregor confessed to killing the victim during a fight and leaving her body in a wooded rural area.
A jury convicted Mr. McGregor of first degree murder and sentenced him to death. The Oklahoma Court of Criminal Appeals reversed that conviction and death sentence, holding, under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), that Mr. McGregor was entitled to a court-appointed psychiatrist. See McGregor v. State, 754 P.2d 1216, 1218 (Okla.Crim.App.1988). That reversal came after an evidentiary hearing revealed Mr. McGregor had a long and extensive history of mental illness. See id.
On remand, a jury found Mr. McGregor competent to stand trial. At his second murder trial, in 1989, Mr. McGregor did not deny the murder, but instead pled not guilty by reason of insanity. The jury rejected that defense and again convicted him of first degree murder.
At sentencing, the State charged that the murder was especially heinous, atrocious or cruel; Mr. McGregor committed the murder to avoid arrest and prosecution; and he presented a continuing threat to society. The jury found the existence of the first two aggravators, but found Mr. McGregor was not a continuing threat. The jury again sentenced him to death.
The Oklahoma Court of Criminal Appeals affirmed the conviction and death sentence, and denied post-conviction relief. See McGregor v. State, 885 P.2d 1366 (Okla.Crim.App.1994), cert. denied, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995); McGregor v. State, 935 P.2d 332 (Okla.Crim.App.), cert. denied, 521 U.S. 1108, 117 S.Ct. 2489, 138 L.Ed.2d 996 (1997).
I. STANDARDS OF REVIEW
Because Mr. McGregor filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), that Act applies to this appeal. See Williams v. Taylor, —U.S. —, —, 120 S.Ct. 1479, 1486, 146 L.Ed.2d 435 (2000). Mr. McGregor, therefore, will not be entitled to habe-as relief unless the state court’s adjudication of the merits of his claim “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established” Supreme Court precedent or “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d).
Under the “contrary to” clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the “unreasonable application” clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court’s decisions but unreason *1250 ably applies that principle to the facts of the prisoner’s case.
Williams v. Taylor, — U.S. —, —, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).
If the state court has not addressed the merits of a claim, and “the federal district court made its own determination in the first instance,” then this court reviews “the district court’s conclusions of law de novo and its findings of fact, if any, for clear error.” LaFevers v. Gibson, 182 F.3d 705, 711 (10th Cir.1999).
The district court granted Mr. McGre-gor a certificate of appealability on all of the following issues. See 28 U.S.C. § 2253(c).
II. COMPETENCY TO STAND TRIAL
A. Unconstitutional Burden of Proof
Following the reversal of his first conviction, a jury determined Mr. McGregor was competent to stand trial. At that competency proceeding, however, the trial court unconstitutionally required him to prove his incompetence by clear and convincing evidence. See Cooper v. Oklahoma, 517 U.S. 348, 350, 369, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).
Mr. McGregor challenged the application of that burden of proof for the first time in state post-conviction proceedings. Applying the 1995 amendments to Oklahoma’s post-conviction procedures, the Oklahoma Court of Criminal Appeals declined to consider his Cooper claim. See McGregor, 935 P.2d at 333, 334. Respondents assert that Mr. McGregor has thus procedurally defaulted his Cooper claim. This procedural due process claim is subject to procedural default. See, e.g., Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 567 (10th Cir.2000).
The Oklahoma Court of Criminal Appeals decided Mr. McGregor’s direct criminal appeal in 1994; the United States Supreme Court denied certiorari in October 1995. The 1995 amendments to Oklahoma’s post-conviction procedure became effective November 1, 1995. See Rogers v. Gibson, 173 F.3d 1278, 1290 n. 12 (10th Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 944, 145 L.Ed.2d 820 (2000). The Supreme Court did not decide Cooper until April 1996.[1] Because “[t]he 1995 Oklahoma statutory amendments greatly circumscribed the court’s power to apply intervening changes in the law to post-conviction applicants” and because “a defendant cannot be expected to comply with a procedural rule that did not exist at the time of the purported default,” this state procedural bar is not adequate to preclude federal habeas review. James v. Gibson, 211 F.3d 543, 550-51 (10th Cir.2000) (quotation omitted); see also, e.g., Clayton, 199 F.3d at 1171.
Clearly established Supreme Court precedent provides that the criminal trial of one who is incompetent violates due process. See Cooper, 517 U.S. at 354, 116 S.Ct. 1373, citing cases. Because the jury in this case determined Mr. McGre-gor’s competency under an unconstitutional burden of proof, this court cannot presume its competency finding to be correct. See, e.g., Van Woudenberg, 211 F.3d at 567 n. 5. Rather, this court must review his competency claim as if there had been no competency hearing at all. See, e.g., id.
“A competency claim based upon procedural due process involves a defendant’s constitutional right, once a bona fide doubt has been raised as to competency, to an adequate state procedure to insure that he is in fact competent to stand trial.” Barnett v. Hargett, 174 *1251 F.3d 1128, 1133-34 (10th Cir.1999). The issue presented, therefore, is whether a bona fide doubt exists as to Mr. McGre-gor’s competence at the time of his trial. See, e.g., Van Woudenberg, 211 F.3d at 567.
A defendant will be deemed competent to stand trial if at the time of trial he had “sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and ... a rational as well as factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Although not limited to these factors, a court conducting a competency inquiry should consider defendant’s demeanor at trial, any evidence of irrational behavior by defendant, and perhaps most important, any prior medical opinions regarding competency.
Clayton, 199 F.3d at 1171.
Careful review of the record fails to persuade us that there was a bona fide doubt as to Mr. McGregor’s competency at the time of trial. Mr. McGregor does have a long history of mental illness and treatment with psychotropic medication. That alone, however, is insufficient to establish that he was incompetent to stand trial. See, e.g., United States v. Mackovich, 209 F.3d 1227, 1233 (10th Cir.2000).
A treating psychiatrist deemed him competent prior to his first trial, in 1983: Although the trial court, prior to his second trial in 1989, found “initial doubt” sufficient to necessitate a psychiatric evaluation, the subsequent examining psychologist’s report, concluding Mr. McGregor was competent, dispelled that initial concern. Foster v. Ward, 182 F.3d 1177, 1191 (10th Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 1438, 146 L.Ed.2d 326 (2000). Although these competency determinations did rest on Mr. McGregor’s continued treatment with antipsychotic medication, the evidence fails to indicate any significant disruption in his medication during trial.[2] See Walker v. Attorney Gen., 167 F.3d 1339, 1346 (10th Cir.) (competency determination could change if, among other things, petitioner failed to continue taking his medication), cert. denied, — U.S. —, 120 S.Ct. 449, 145 L.Ed.2d 366 (1999). The record does not indicate any occasion when a mental health official has ever found that Mr. McGregor was, at any time, incompetent to stand trial. See Clayton, 199 F.3d at 1171-72 (no bona fide doubt existed as to petitioner’s competence to stand trial, in light of unequivocal testimony of three medical experts that petitioner was competent to stand trial).
During trial, defense counsel did raise concerns about Mr. McGregor’s competency. Although defense counsel’s representations concerning a defendant’s competency should be considered, they are not dispositive. “[C]oncerns of counsel alone *1252 are insufficient to establish doubt of a [petitioner’s] competency,” Mackovich, 209 F.3d at 1233 (further quotation omitted); see also Bryson v. Ward, 187 F.3d 1193, 1202 (10th Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 1566, 146 L.Ed.2d 469 (2000).
The trial judge, who had ample opportunity to observe Mr. McGregor daily during trial, did not express any concerns that he was incompetent. See Van Woudenberg, 211 F.3d at 568; Foster, 182 F.3d at 1191. On several occasions during trial, in response to defense counsel’s assertions that Mr. McGregor was having mental difficulties on a particular day, the trial judge specifically noted that he had observed Mr. McGregor on a number of different occasions prior to trial and that Mr. McGregor seemed the same that day as he always did. In addition, the trial judge had the opportunity to observe Mr. McGregor testify during an in camera suppression hearing, during which Mr. McGregor was able to understand the questions posed and respond accordingly.
Further, Mr. McGregor’s conduct and demeanor at trial were not so bizarre and irrational as to raise a bona fide doubt that he was incompetent. Cf. United States v. Williams, 113 F.3d 1155, 1157-61 (10th Cir.1997) (holding, in federal criminal appeal, trial court erred in failing to inquire into defendant’s competence, where her hysteria, outbursts and disruptive behavior throughout course of trial raised bona fide doubt as to her competence).
Despite Mr. McGregor’s lengthy history of mental illness and psychiatric treatment, therefore, he is unable to establish a bona fide doubt that he was incompetent at the time of his trial. See Walker, 167 F.3d at 1346-47.[3]
B. Competency Trial
In addition to challenging the trial court’s use of an unconstitutional burden of proof, Mr. McGregor argues that his competency trial was fundamentally unfair because the trial court improperly admitted hearsay and opinion testimony. However, because this court reviews Mr. McGregor’s competency claim as if there had never been a competency trial, see, e.g., Van Woudenberg, 211 F.3d at 567 n. 5, we do not need to address most of these additional challenges to the propriety of the competency proceedings.
Mr. McGregor does assert that his trial attorney provided ineffective representation during the competency trial by failing to obtain and present psychiatric evidence in support of his claim of incompetence. We address this argument because it could implicate additional evidence that might create a bona fide doubt as to his competency.
The Oklahoma Court of Criminal Appeals deemed Mr. McGregor to have procedurally defaulted this claim because he failed to raise it on direct appeal, noting this claim did not depend on facts outside the appellate record. See McGregor, 935 P.2d at 335. Because he was represented by different attorneys at trial and on appeal, the adequacy of this state procedural bar to preclude habeas review turns on whether Mr. McGregor could have developed the factual basis of this claim on direct appeal. See English v. Cody, 146 F.3d 1257, 1263 (10th Cir.1998). Review of the prejudice prong of this ineffective assistance of counsel claim, see Strickland v. Washington, 466 U.S. 668, 687, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires consideration of the evidence trial counsel could have obtained and presented. See Williams, — U.S. at —, 120 S.Ct. at 1515; see also, e.g., Cooks v. Ward, 165 *1253 F.3d 1283, 1296 (10th Cir.1998), cert. denied, — U.S. —, 120 S.Ct. 94, 145 L.Ed.2d 80 (1999). Because that information would have been outside the trial record, this state procedural bar is not adequate to preclude federal habeas review. See English, 146 F.3d at 1263.
Addressing the merits of this claim, however, Mr. McGregor fails to assert any specific additional evidence counsel could have obtained and presented. He has, therefore, failed to establish the requisite prejudice stemming from any deficiency in counsel’s performance. See Wallace v. Ward, 191 F.3d 1235, 1243-44 & 1244 n. 6 (10th Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 2222, 147 L.Ed.2d 253 (2000).
III. STATE’S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE
Mr. McGregor contends the State failed to disclose exculpatory evidence directly pertaining to this murder and evidence that would have further supported his insanity defense, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To obtain habeas relief, he must establish that the withheld evidence was “favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.” Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).
A. Evidence Directly Concerning Murder
Mr. McGregor asserts the State failed to disclose a tape recording of a conversation about the murder between him and Edwin Hamilton, a friend of Mr. McGregor’s who was acting at the behest of law enforcement officials. Following an evidentiary hearing, the state trial court found that the tape was inaudible and that this conversation had failed to reveal anything relevant to the investigation. This court must presume these factual findings are correct. See 28 U.S.C. § 2254(e)(1); see also Van Woudenberg, 211 F.3d at 571-72 (applying presumption of correctness to facts underlying Brady claim). Mr. McGregor fails to assert clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); see also Van Woudenberg, 211 F.3d at 572. In light of those findings, any evidence of this conversation between Mr. McGregor and Hamilton would have been neither material nor exculpatory. Mr. McGregor, therefore, was not prejudiced by its suppression.
Mr. McGregor also alleges the State faded to disclose his inaccurate statement to police that the victim’s body was west of Wetumka, Oklahoma; in fact, authorities found the body east of Wetumka. The government’s failure to disclose exculpatory evidence is immaterial if Mr. McGregor has independent knowledge of that evidence. See United States v. Quintanilla, 193 F.3d 1139, 1149 (10th Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 1442, 146 L.Ed.2d 330 (2000). In addition, this misstatement was not material to his defense — that is, there is no reasonable probability that, had the State disclosed this evidence to the defense, the result of the trial would have been different. See, e.g., Strickler, 527 U.S. at 280, 119 S.Ct. 1936.
B. Evidence Further Supporting Insanity Defense
Mr. McGregor contends the State failed to disclose to him his confessions to other crimes. He made these confessions at approximately the same time he confessed to killing Ms. Plumb. Authorities investigated, but found no evidence to verify the accuracy of any of the other confessions. Mr. McGregor now asserts that these false confessions could have bolstered his insanity defense.
The record indicates that defense counsel was aware, prior to this trial, that Mr. McGregor had made such statements. See Tr., Apr. 4, 1989 Mot. Hr’g at 31. There *1254 can be “no suppression by the state of evidence already known by and available to [defendant] prior to trial.” United States v. Hernandez-Muniz, 170 F.3d 1007, 1011 (10th Cir.1999) (quotation omitted). Further, the government’s failure to disclose exculpatory evidence is immaterial if Mr. McGregor has independent knowledge of that evidence. See Quintanilla, 193 F.3d at 1149.
In any event, the Oklahoma Court of Criminal Appeals, in state post-conviction proceedings, held Mr. McGregor had failed to establish that these other confessions were either exculpatory or material. See McGregor, 935 P.2d at 337. That determination was not an unreasonable application of clearly established Supreme Court precedent, see Moore v. Gibson, 195 F.3d 1152, 1165 (10th Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 2206, 147 L.Ed.2d 239 (2000), in light of the detail and accuracy of his confession to Ms. Plumb’s murder, and the significant amount of evidence presented to the jury concerning his mental illness.
IV. MR. McGREGOR’S INCULPATO-RY STATEMENTS
A. Admission
Mr. McGregor asserts that his confession was not voluntary, and the waiver of his Miranda[4] rights was not knowing, intelligent, and voluntary. The voluntariness inquiry turns on whether, under the totality of the circumstances, the confession was the product of a free and deliberate choice rather than intimidation, coercion or deception. See Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). The focus of this inquiry is on police overreaching. See Colorado v. Connelly, 479 U.S. 157, 170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).
Mr. McGregor asserts that his confession was involuntary because of his mental illness, and in light of the conduct of police in refusing to give him his medication and not permitting him to smoke cigarettes. Mr. McGregor’s mental illness, without any evidence of police coercion, is insufficient to render his confession involuntary. See Connelly, 479 U.S. at 164, 167, 107 S.Ct. 515; see also, e.g., Nickel v. Hannigan, 97 F.3d 403, 410-11 (10th Cir.1996). Although he might be more susceptible to government coercion due to his mental illness, that is relevant only if there has been police coercion. See United States v. Erving L., 147 F.3d 1240, 1249 (10th Cir.1998).
The Oklahoma Court of Criminal Appeals determined that the record did not indicate any police coercion. See McGregor, 885 P.2d at 1377-78. This determination was reasonable. See 28 U.S.C. § 2254(d). Mr. McGregor testified in camera that he had not been taking his medication prior to his arrest. The record does not indicate that police provided him with any medication as a result of his confession. There is no evidence, therefore, that police withheld his medication in an effort to coerce his confession. Cf. Greenwald v. Wisconsin, 390 U.S. 519, 519-21, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968) (per curiam) (under totality of circumstances, police coerced confession where, among other coercive circumstances, accused required high blood pressure medication twice daily and police held accused without medication for over twelve hours, until he confessed).
Mr. McGregor further asserts that he is a chain smoker who confessed due to his desperate need for a cigarette. But cf. United States v. Palmer, 203 F.3d 55, 61-62 (1st Cir.) (rejecting claim that confession made by heroin addict was involuntary because he was suffering withdrawal symptoms), cert. denied, — U.S. —, 120 S.Ct. 2756, 147 L.Ed.2d 1018 (2000). There is no dispute that the jail’s policy forbids smoking. The sheriff testified that police officials interviewing inmates could and did sometimes give inmates cigarettes. The Oklahoma appellate court’s determination, that even assuming officers would *1255 permit Mr. McGregor to smoke when he gave statements, “nothing suggests and the record does not support the argument that this police activity rises to the level of coercion,” McGregor, 885 P.2d at 1378, was reasonable.
For these same reasons, the state courts’ determination that Mr. McGregor voluntarily waived his Miranda rights was reasonable. He further asserts, however, that the waiver of his rights was not knowing and intelligent. Under clearly established Supreme Court precedent, the relevant inquiry is whether Mr. McGregor appreciated the consequences of his actions, based on a totality of the circumstances. See, e.g., Patterson v. Illinois, 487 U.S. 285, 296-97, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); Moran, 475 U.S. at 421, 106 S.Ct. 1135. The Oklahoma appellate court determined that the record “did not suggest that he could not understand what he did when he made these statements.” McGregor, 885 P.2d at 1378. In light of the record, this determination was reasonable.
B. Jury Instructions
Pursuant to Oklahoma law, once the trial court determines a defendant’s confession was voluntary, as an “additional safeguard!],” “the question of voluntariness is submitted to the jury, together with all the facts and circumstances surrounding the confession.” Hopper v. State, 736 P.2d 538, 539-40 (Okla.Crim.App.1987). See generally Jackson v. Denno, 378 U.S. 368, 378-79 & 378 n. 8, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (noting this procedure “does not ... pose hazards” to defendant’s rights). Mr. McGregor challenges the trial court’s instructions to the jury concerning its consideration of the voluntariness of his inculpatory statements and the weight to be afforded them. In particular, he argues the instructions required the jury to perform an analysis similar to that applicable to his insanity defense, before the jury could consider the effects of his mental illness on the voluntariness of his inculpatory statements. The Oklahoma Court of Criminal Appeals held that the trial court had “inappropriately inserted the standard for presentation of the insanity defense,” resulting in an ambiguous jury instruction. McGregor, 885 P.2d at 1380. Nonetheless, that court further held that “[t]he instructions neither denied McGregor a constitutional or statutory right nor went to the foundation of the case.” Id.
In these habeas proceedings, Mr. McGregor argues that these instructions deprived him of due process, at both the first and second stages of trial, by depriving him of a state law right to have the jury consider his mental illness in determining the voluntariness of his statements. State law errors, however, are not grounds for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Nor did this instruction otherwise render his trial fundamentally unfair. See id. at 70, 112 S.Ct. 475.
Y. PRECLUSION OF INMATES’ TESTIMONY
Mr. McGregor asserts that the trial court deprived him of his constitutional rights to compulsory process and to present mitigating evidence by refusing to compel the presence of three inmates he sought to have testify on his behalf. “Clearly established Supreme Court precedent holds that a defendant’s right to due process and compulsory process includes the right to present witnesses in his defense.” Boyd v. Ward, 179 F.3d 904, 921 (10th Cir.1999) (citing cases), cert. denied, — U.S. —, 120 S.Ct. 1188, 145 L.Ed.2d 1093 (2000). To obtain habeas relief, however, Mr. McGregor must show that the exclusion of his witnesses rendered his trial fundamentally unfair. See id. That inquiry turns on whether the excluded evidence was material — that is, whether it “might have affected the trial’s outcome.” Id. (quotation omitted).
Further, “clearly established Supreme Court precedent requires that a capital sentencer not be precluded from *1256 considering, as a mitigating factor, any aspect of the defendant’s character or record, and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” Id. (quotations omitted; citing cases). As long as the mitigating evidence is within the sentencer’s effective reach, however, the Eighth Amendment is satisfied. See id.
Mr. McGregor argues that he required the testimony of inmates Johnny Garrison and Omar White to testify to his mental condition at the time of this trial. He does not specify to what these inmates would have testified. The Oklahoma Court of Criminal Appeals held that this testimony was irrelevant. See McGregor, 885 P.2d at 1379. In light of his failure to establish a bona fide doubt concerning his competency to stand trial, the state appellate court’s determination that this testimony was irrelevant was reasonable. Nor was this evidence material for sentencing purposes, in light of the significant amount of evidence Mr. McGregor did present concerning his mental illness.
He asserts he required the testimony of inmate James Winters concerning his mental condition at the time of the crime. Winters shared a cell with Mr. McGregor in June 1983. Mr. McGregor contends Winters could have testified to Mr. McGregor’s mental state at that time, including corroborating his claims that he requested cigarettes and medication, and that he once returned from interrogation with cigarettes in his pockets. In light of the reasonableness of the state courts’ determination that any denial of medication and cigarettes did not amount to coercion, Winters’ proffered testimony was not material to any first-stage issues. Nor would this testimony have been relevant during sentencing.
VI. MEANING OF LIFE SENTENCE WITHOUT PAROLE
Pursuant to Oklahoma law, the trial court instructed the jury on its three sentencing options — life imprisonment, life imprisonment without parole, and death. The jury, during its sentencing deliberations, inquired of the court “what happens on life without parole?” The court’s response directed the jury to “read the Instructions, they speak for themselves.” Mr. McGregor urges that the trial court’s response violated Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). We disagree. The instruction’s “three-way choice fulfills the Simmons requirement that a jury be notified if the defendant is parole ineligible.” Mayes v. Gibson, 210 F.3d 1284, 1294 (10th Cir.2000).
VII. PROSECUTORIAL MISCONDUCT
Mr. McGregor challenges the following prosecutorial comments: the prosecutor, contrary to Oklahoma law, indicated to prospective jurors that Mr. McGregor would walk out of the courtroom a free man if the jury found him not guilty by reason of insanity; referred to his being held in protective custody; elicited testimony that he had indicated that the penitentiary would do him no good; insinuated Mr. McGregor was malingering and faking his mental illness; elicited testimony that he had twice been found competent to stand trial; made irrelevant attacks on a defense expert; asserted Mr. McGregor’s insanity defense was a fraud, his experts were worthless, and he was a liar and a con artist; attempted to evoke the jurors’ sympathy by eliciting testimony concerning the victim’s financial difficulties and Mr. McGregor’s failure to pay his rent; noted Mr. McGregor’s family had come to court to beg for his life, but that, if the victim’s family could have, they would have begged Mr. McGregor to spare her life; and referred to a photo of the victim’s remains as their picture of her, in response to the admission of a picture of Mr. McGregor as a young boy.
Because these prosecutorial misconduct claims do not implicate any specific constitutional right, Mr. McGregor must establish that the conduct or remark rendered the trial fundamentally unfair, see *1257 id. at 1293 (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). These comments, considered separately or together, did not do so. The Oklahoma Court of Criminal Appeals’ decision denying relief on these claims, therefore, was reasonable.
Mr. McGregor also contests several other remarks that might implicate specific constitutional rights. See Paxton v. Ward, 199 F.3d 1197, 1217 (10th Cir.1999). He alleges the prosecutor improperly defined reasonable doubt during voir dire, and confused the jury at sentencing by arguing Mr. McGregor’s mitigating evidence was really an aggravating factor. These comments do not warrant habeas relief. The trial court instructed the jury on reasonable doubt. See Clayton, 199 F.3d at 1173-74. Further, a prosecutor is entitled to comment on the weight to be afforded mitigating evidence. See Fox v. Ward, 200 F.3d 1286, 1299-1300 (10th Cir.2000). The state appellate court’s denial of relief on these claims was, thus, reasonable.
VIII. DISCOVERY
Mr. McGregor asserts that the district court abused its discretion in denying discovery concerning crime scene photographs, physical evidence and the results of a polygraph test he believes the State may have given him. A federal habeas petitioner will be entitled to discovery only “if, and to the extent that, the [district court] judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.” Rule 6(a), Rules Governing Section 2254 Cases. The district court did not abuse its discretion in denying Mr. McGregor this discovery.
IX. CONCLUSION
Having carefully considered the parties’ arguments and the record, we AFFIRM the district court’s denial of habeas relief.

. Respondents do not challenge the application of Cooper to this case, where the direct appeal became final prior to the Court's Cooper decision. See Clayton v. Gibson, 199 F.3d 1162, 1170 & n. 2 (10th Cir.1999) (pre-AED-PA; declining to decide whether Cooper applied to cases where direct appeal was final prior to Cooper, when State did not raise issue), petition for cert. filed, (U.S. May 20, 2000) (No. 99-9630). See generally Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

. The information in the record concerning Mr. McGregor's medication at the time of his second trial, in 1989, comes from representations made to the trial court by defense counsel and the prosecutor. That information indicates defense counsel thought Mr. McGregor should be receiving 400 mg. of Thorazine each day, but that, according to Mr. McGregor, prison officials had increased that dosage to 500 mg. per day one week prior to trial. The prosecutor, apparently having checked with prison officials, the next day asserted to the court that Mr. McGregor was actually supposed to receive 50 mg. of Thorazine in the morning and again at noon, and 150 mg. in the evening, for a total of 250 mg. of Thorazine each day. At that point, defense counsel objected to the prosecutor’s having this medical information, the trial court directed defense counsel to straighten out Mr. McGregor's medication, apparently with jail officials, and the issue was never raised again.
Mr. McGregor did refuse to take his medication one morning during the trial, and, on another morning, jail officials delayed administering his medication because they had run out. In both instances he received a dose by noon. In the second instance, the trial judge delayed trial until the medication took effect. Mr. McGregor’s morning dosage was apparently much smaller than his evening dosage. There is no indication in the record that Mr. McGregor ever failed to take his evening medication. Further, according to the prosecutor, prison officials told him that it would take two weeks for a change in dosage to affect Mr. McGregor’s behavior.

. Even if we interpreted Mr. McGregor’s competency claim to assert a substantive due process argument that he was tried while he was in fact incompetent, he would still not be entitled to habeas relief. The evidence in this case is also not sufficient to meet the more onerous standard applicable to a substantive due process claim. See Van Woudenberg, 211 F.3d at 569.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).