**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 1, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHARLES FREDERICK WARNER,

      Petitioner - Appellant,

v.

ANITA TRAMMELL, Interim Warden,
Oklahoma State Penitentiary,[*]

      Respondent - Appellee.

No. 11-6236
(D. Ct. No. 5:07-CV-00807-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[†]

Before **LUCERO, O'BRIEN,** and **MATHESON,** Circuit Judges.

**MATHESON**, Circuit Judge.

In 2003, an Oklahoma jury found Charles Warner guilty of the rape and murder of

an 11-month-old child. The jury returned a death sentence for the murder conviction.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Anita Trammell, the Interim Warden of
Oklahoma State Penitentiary, is automatically substituted for Randall G. Workman as
Respondent in this case.

[†] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

After unsuccessfully seeking state appellate and post-conviction relief, Mr. Warner filed

an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The United

States District Court for the Western District of Oklahoma denied his § 2254 application.

Mr. Warner pursues only one issue on appeal: whether the Oklahoma trial court

violated his due process rights by failing to clarify, in response to a jury question, the

meaning of life without parole. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we

affirm the district court's denial of relief on this issue.

## I. BACKGROUND

### A. *Trial Court Proceedings*

In 1997, Mr. Warner was charged with the first degree rape and murder of an 11-

month-old girl.[1] He was tried and convicted in Oklahoma state court on both counts and

sentenced to death. The Oklahoma Court of Criminal Appeals ("OCCA") reversed his

conviction and sentence because of juror bias and ineffective assistance of trial counsel.

*Warner v. State*, 29 P.3d 569, 572-74, 575 (Okla. Crim. App. 2001).

In June 2003, Mr. Warner was retried on the first degree rape and murder charges.

The jury found him guilty of both crimes. The jury sentenced Mr. Warner to 75 years of

imprisonment for the rape conviction. The trial proceeded to a penalty phase to

determine Mr. Warner's sentence for the murder conviction.

---

[1] The facts of the murder are recounted in *Warner v. State*, 144 P.3d 838, 856-57
(Okla. Crim. App. 2006). This appeal does not turn on the facts supporting Mr. Warner's
conviction, so we need not repeat them here.

At the penalty phase, the State sought to prove beyond a reasonable doubt two statutory aggravating circumstances that would qualify Mr. Warner for the death penalty: (1) "[t]he murder was especially heinous, atrocious, or cruel," Okla. Stat. tit. 21, § 701.12(4); and (2) "[t]he existence of a probability that [Mr. Warner] would commit criminal acts of violence that would constitute a continuing threat to society," *id.* § 701.12(7); *see also id.* § 701.11 (stating that the death penalty cannot be imposed unless the jury finds beyond a reasonable doubt the existence of at least one statutory aggravating circumstance). The State incorporated evidence from the trial's guilt phase as proof that the murder was especially heinous, atrocious, or cruel. The majority of the State's penalty phase evidence sought to prove that Mr. Warner posed a continuing threat to society.

At the close of the penalty phase, the defense proposed the following instruction about the jury's sentencing options under Oklahoma law:

> You are instructed that these sentences mean what they say. That is[,] if you sentence the Defendant to life imprisonment without the possibility of parole, he will actually be sentenced to imprisonment in the State Penitentiary for the balance of his natural life without the possibility of parole.
> Under the Constitution of this State, the Parole Board cannot recommend parole nor can the Governor grant parole to a person sentenced to life imprisonment without the possibility of parole.
> If, on the other hand, you sentence the Defendant to life imprisonment, he actually will be sentenced to imprisonment in the State Penitentiary for life. He may or may not at some point in time become eligible for parole.
> In your deliberations, you are not to speculate that these sentences mean anything other than what I have just told you . . . .

OCCA Original Record, Vol. VI at 1023.

Concerned that this proposed instruction was legally incorrect, the trial court refused to give it. Instead, it instructed the jury that it had three sentencing options: "Under the law of the State of Oklahoma, every person found guilty of Murder in The First Degree shall be punished by death, or imprisonment for life without the possibility of parole, or imprisonment for life with the possibility of parole." *Id.* at 1066.

During deliberations, the jury sent the trial court the following question: "Is there ANY WAY or chance for [Mr. Warner] to get out of prison if he is sentenced to life without parole? EVER?" ROA, Vol. 1, Pt. 2 at 314. Defense counsel asked the court to tell the jurors "that these sentences mean what they say" and to give the previously proposed instruction explaining the sentencing options. Trial Transcript, June 25-26, 2003, Vol. VIII at 1550. The State argued that the OCCA's precedent endorsed "not giving an explanation of what [life without parole] means or might mean some day." *Id.* The trial court responded to the jury as follows: "You have all of the law and evidence necessary to reach a verdict." ROA, Vol. 1, Pt. 2 at 313.

The jury determined that the State proved beyond a reasonable doubt the existence of both aggravating circumstances. It sentenced Mr. Warner to death.

### B. *Post-Trial Proceedings*

Mr. Warner appealed to the OCCA. Among other claims, he argued that the trial court violated his constitutional rights by failing "to define 'life without parole' to the jury" in response to its question. *Warner v. State*, 144 P.3d 838, 885 (Okla. Crim. App.

2006).  The OCCA held that the trial court's response was appropriate under the OCCA's precedent.  *Id.* at 886.  It denied Mr. Warner's appeal, and the Supreme Court denied certiorari review.  *Warner v. Oklahoma*, 550 U.S. 942 (2007).  Mr. Warner sought state post-conviction relief, which the OCCA also denied.

On April 3, 2008, Mr. Warner filed a 28 U.S.C. § 2254 application for a writ of habeas corpus in federal district court.  He asserted 17 grounds for relief.  In Ground II, Mr. Warner argued that the trial court's failure to explain to the jury the meaning of life without the possibility of parole violated his constitutional rights.  The district court denied his § 2254 application.

The district court granted Mr. Warner a certificate of appealability ("COA") for three issues raised in his § 2254 application.  This court granted a COA for three additional issues, including the following:  "Did the trial court's response to the jury's request for information regarding the meaning of life without parole properly clarify the jury's confusion?"  Case Management Order at 1 (November 8, 2011).  The appeal before us concerns only this issue.

## II.  **DISCUSSION**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs our review of § 2254 claims that a state court resolved on the merits.  In enacting AEDPA, Congress created a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations

omitted) (quotations omitted).

If a state court adjudicated the petitioner's claim on the merits, we may grant habeas relief on that claim only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] Our review of the federal district court's legal analysis of the state court decision is de novo, *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006), and is confined "to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct. at 1398.

Mr. Warner argues that, in response to the jury's question asking whether he could be released if sentenced to life without parole, the trial court gave an answer that violated his due process rights under the Fourteenth Amendment. He contends that the OCCA's denial of this claim was contrary to, or an unreasonable application of, the Supreme Court's holding in *Simmons v. South Carolina*, 512 U.S. 154 (1994).

We first discuss *Simmons* and this court's precedent interpreting that decision.[3] We then address Mr. Warner's arguments on appeal.

---

[2] We may also grant relief if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Mr. Warner does not argue that the OCCA's ruling was based on an unreasonable determination of the facts.

[3] We recognize that this "circuit['s] precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and thus "cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting 28 U.S.C. § 2254(d)(1)). But we may consult our case law "to ascertain

Continued . . .

A. **Simmons**

In *Simmons*, the petitioner was convicted of the murder of an elderly woman. 512 U.S. at 156. The conviction resulted in sentencing options of death or life imprisonment. *Id.* at 157, 165. The life imprisonment option did not mention parole eligibility, though in fact the petitioner would not have been eligible for parole. *Id.* at 158, 162.

During the trial's penalty phase, the prosecution argued the petitioner would pose a continuing threat to others. *Id.* at 157. Because the prosecution put the petitioner's future dangerousness at issue, defense counsel argued to the trial court that jurors might be concerned whether the petitioner could be paroled if sentenced to life imprisonment. Defense counsel urged the court to explain to the jury that the petitioner would be ineligible for parole. *Id.* at 159-60. The trial court refused to give the defense's proposed instruction that if the jury "recommend[ed] that [the petitioner] be sentenced to life imprisonment, he actually will be sentenced to imprisonment in the state penitentiary for the balance of his natural life." *Id.* at 160.

During deliberations, the jury asked the trial court whether "the imposition of a life sentence carr[ied] with it the possibility of parole?" *Id.* The court responded, over the petitioner's objection, as follows: "You are instructed not to consider parole or parole eligibility in reaching your verdict. . . . That is not a proper issue for your consideration.

_____

Cont.

the contours of clearly established Supreme Court precedent." *Littlejohn v. Trammell*, 704 F.3d 817, 828 n.3 (10th Cir. 2013).

-7-

The terms life imprisonment and death sentence are to be understood in their [plain] and ordinary meaning." *Id.* The jury sentenced the petitioner to death, and the South Carolina Supreme Court affirmed the conviction and sentence. *Id.* at 161.

The United States Supreme Court reversed. It said that "[w]here the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process entitles the defendant to inform the capital sentencing jury—by either argument or instruction—that he is parole ineligible." *Id.* at 178 (O'Connor, J., concurring in the judgment); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1280 n.15 (10th Cir. 1999) (noting that Justice O'Connor's concurrence reflects the Court's holding in *Simmons*). The Court has since reinforced this holding. *See Shafer v. South Carolina*, 532 U.S. 36, 51 (2001) ("We therefore hold that whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's new scheme, due process requires that the jury be informed that a life sentence carries no possibility of parole."); *see also Kelly v. South Carolina*, 534 U.S. 246, 248 (2002).

In *Simmons*, the jury was given a choice between two sentences, death or life imprisonment. And because the jury might have been led to believe incorrectly that the defendant could be paroled if sentenced to life imprisonment, jurors were faced with "a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration." *Smith v. Mullin*, 379 F.3d 919, 938 (10th Cir. 2004) (quotations omitted); *see also Johnson v. Gibson*, 254 F.3d 1155, 1166 (10th Cir. 2001). In contrast

-8-

to South Carolina's sentencing scheme in *Simmons* and *Shafer*, Oklahoma law provides capital juries with three sentencing options:  (1) death, (2) life imprisonment without the possibility of parole, or (3) life imprisonment.  Okla. Stat. tit. 21, § 701.9(A); *Hamilton v. Mullin*, 436 F.3d 1181, 1191 (10th Cir. 2006).  We have held that Oklahoma's three-option sentencing scheme is consistent with *Simmons* because "the options do not create a false choice between sentencing [a] petitioner to death and sentencing him to a limited period of incarceration."  *Id.* (quoting *Mayes v. Gibson*, 210 F.3d 1284, 1294 (10th Cir. 2000)).

Although Oklahoma's sentencing scheme is consistent with *Simmons*, "we have held that a due process violation can be created *by the trial court*, which in some instances may engender juror confusion, thereby creating a 'false choice,' even in light of instructions that may correctly state the law."  *Littlejohn v. Trammell*, 704 F.3d 817, 827 (10th Cir. 2013).[4]  We therefore interpret *Simmons* to permit habeas relief where

> (1) the prosecution [sought] the death penalty; (2) the prosecution place[d] the defendant's future dangerousness at issue; (3) the jury ask[ed] for clarification of the meaning of life imprisonment, or a synonymous statutory term; and (4) the judge's response threaten[ed] to cause a jury's misunderstanding so the jury [could] perceive a false choice of incarceration when future dangerousness [wa]s at issue.

*Id.* at 828 (quotations omitted).

_____

[4] We discuss here the OCCA's decision in *Littlejohn v. State*, 85 P.3d 287 (Okla. Crim. App. 2004), and this circuit's habeas decision in *Littlejohn v. Trammell*, 704 F.3d 817 (10th Cir. 2013).  For clarity, we refer to these decisions by their full names throughout this opinion.

Many *Simmons* claims in this court have focused on the fourth showing: whether the trial judge's response to a jury question about life without parole threatened to create misunderstanding such that jurors could falsely conclude their sentencing options were death or a limited period of incarceration. *See, e.g.*, *Littlejohn v. Trammell*, 704 F.3d at 828-29; *Welch v. Workman*, 639 F.3d 980, 1005 (10th Cir. 2011), *cert. denied*, 132 S. Ct. 292 (2011); *Mollett*, 348 F.3d at 915-916; *Johnson*, 254 F.3d at 1165. If the jury asked for clarification about the meaning of life without parole under Oklahoma's sentencing scheme, we have held the trial court does not violate the defendant's due process rights by failing to provide further explanation. *See McCracken v. Gibson*, 268 F.3d 970, 980-81 (10th Cir. 2001). We also have held the trial court may refer the jury back to the instructions. *See Welch*, 639 F.3d at 1005; *McCracken*, 268 F.3d at 980-81 & n.3; *McGregor v. Gibson*, 219 F.3d 1245, 1256 (10th Cir. 2000), *overruled en banc on other grounds by* 248 F.3d 946 (10th Cir. 2001); *Mayes*, 210 F.3d at 1287, 1294. Further, we have said that a trial court's statement that it cannot answer the jury's question is "non-responsive" and properly refers the jury back to the instructions, creating no "false choice" under *Simmons*. *Welch*, 639 F.3d at 1005 (holding no *Simmons* violation where the trial court said it was "not allowed to answer" the jury's parole question); *see also Littlejohn v. Trammell*, 704 P.3d at 829.

But we have found *Simmons* due process violations where, in response to a jury's life-without-parole question, an Oklahoma trial judge explicitly instructed the jury it was not to consider the defendant's parole eligibility. *See Mollett*, 348 F.3d at 915-16

-10-

(granting habeas relief where the trial court "affirmatively instruct[ed] the jury" that "[m]atters of parole are beyond the [purview] of the jury or the court to consider"); *Johnson*, 254 F.3d at 1164-67 (granting habeas relief where the jury asked, "Is life without parole firm—Does it mean [the petitioner] can *never* be paroled[?]" and the trial court responded, "It is inappropriate for you to consider the question asked").

## B. *Mr. Warner's* **Simmons** *Claim*

The parties agree that the first three requirements of a due process claim under *Simmons* are satisfied in this case: (1) the prosecution sought the death penalty, (2) it placed Mr. Warner's future dangerousness at issue by arguing he was a continuing threat to society, and (3) the jury asked for clarification about the possibility of Mr. Warner's release under a sentence of life without parole. The issue on appeal is whether the trial court's response to the jury threatened to create a misunderstanding such that jurors perceived a false choice between a death sentence and a limited period of incarceration.

We first address Mr. Warner's argument that the trial court violated his due process rights under *Simmons* because it failed to clarify the meaning of life without parole. Second, we analyze another argument Mr. Warner presses on appeal: that the trial court's response was "code" referring to a previous oral instruction, and that the combination of the "code" and the oral instruction likely led jurors to think they should not consider parole eligibility.

## 1. **Failure to Clarify Life Without Parole**

On direct appeal from his conviction, Mr. Warner argued that the trial court erred

-11-

by "refusing to instruct the jury on the meaning of life without the possibility of parole" after the jury asked about the possibility of his release. Br. of Aplt. at 90, *Warner v. State*, D-2003-829 (Okla. Crim. App. July 26, 2004). The OCCA rejected his claim. It reasoned that the district court's response—"[y]ou have all of the law and evidence necessary to reach a verdict"—was appropriate under its precedent, particularly its decision in *Littlejohn v. State*, 85 P.3d 287 (Okla. Crim. App. 2004).

In *Littlejohn v. State*, the OCCA upheld a challenge to a nearly identical response—that the jury had all the law and evidence it needed to reach a verdict—from the same trial judge to a jury's life-without-parole question. Referring to Tenth Circuit precedent interpreting *Simmons*, the OCCA held that the trial court's response "did not have the effect of creating the false choice dilemma" between death and limited incarceration and that Mr. Littlejohn's case was distinguishable from cases in which trial courts explicitly instructed jurors not to consider parole eligibility. *Id.* at 292.

In this case, the federal district court determined that the OCCA's denial of Mr. Warner's claim was not contrary to, or an unreasonable application of, the holding in *Simmons*. The federal district court said "the trial judge's response referred the jury back to its instructions" and in doing so "did not threaten to create a misunderstanding within the jury such that it would perceive a false choice between sentencing [Mr. Warner] to death and sentencing him to a limited period of incarceration." ROA, Vol. 1, Pt. 3 at 543.

We agree that the OCCA's denial of Mr. Warner's claim was not contrary to, or an unreasonable application of, the Supreme Court's holding in *Simmons*. We have held

-12-

that, under Oklahoma's three-option sentencing scheme, trial courts do not violate a defendant's due process rights under *Simmons* by refusing to further clarify the meaning of life without parole and instead referring the jury back to its instructions. *See Welch*, 639 F.3d at 1005; *McCracken*, 268 F.3d at 980-81 & n.3; *McGregor*, 219 F.3d at 1256; *Mayes*, 210 F.3d at 1287, 1294. Here, the trial court did not violate Mr. Warner's due process rights by telling jurors they had everything in front of them to reach a verdict. This response merely failed to "clarify the life without parole instruction[, which] cannot be 'taken to mean that parole *was* available but that the jury, for some unstated reason, should be blind to this fact.'" *Welch*, 639 F.3d at 1005 (quotations omitted).

Moreover, our recent decision in *Littlejohn v. Trammell* forecloses Mr. Warner's claim. In that case, we reviewed the OCCA's *Littlejohn v. State* decision as part of a federal habeas proceeding. *See Littlejohn v. Trammell*, 704 F.3d at 826-31. The trial court's response to Mr. Littlejohn's jury was the same as the response given to Mr. Warner's jurors. We held it was not unreasonable for the OCCA to conclude that the "trial judge's response . . . was consistent with *Simmons* in that it was not 'insufficient, misleading or erroneous' and did not suggest to the jury that it was forbidden to consider parole." *Id.* at 831 (quoting *Littlejohn v. State*, 85 P.3d at 292).

Recognizing that our decisions foreclose his due process claim, Mr. Warner asks us to reexamine their holdings. However, we are bound by these prior panel decisions absent en banc review or superseding Supreme Court authority. *See Rezaq v. Nalley*, 677 F.3d 1001, 1012 n.5 (10th Cir. 2012).

-13-

Further, Mr. Warner notes that the OCCA has said that juror confusion about parole eligibility continues to persist even under Oklahoma's three-option scheme. *See Littlejohn v. State*, 85 P.3d at 292-93. As a solution, the OCCA has instructed that

> in future cases where the jury during deliberations asks, in some form or fashion, whether an offender who is sentenced to life imprisonment without the possibility of parole is parole eligible, the trial court should either refer the jury back to the instructions, tell the jury that the punishment options are self[-]explanatory, or advise the jury that the punishment options are to be understood in their plain and literal sense and that the defendant will not be eligible for parole if sentenced to life imprisonment without the possibility of parole.

*Id.* (citations omitted).

But the OCCA's suggestions do not constitute clearly established Supreme Court precedent and therefore cannot warrant federal habeas relief. Moreover, the trial court's response here fits within the OCCA's recommendation that courts refer jurors back to the instructions. In addressing the same issue in *Littlejohn v. Trammel*, we concluded that although there was "some appeal" to the argument that "a fair number of jurors [still] do not [fully] comprehend the plain meaning of the life imprisonment without the possibility of parole sentencing option [in Oklahoma], we are constrained to apply precedent that . . . compels the denial of relief." 704 F.3d at 831 (citations omitted) (quotations omitted).

We reach the same result here. The OCCA's denial of Mr. Warner's due process claim was not contrary to, or an unreasonable application of, the Supreme Court's holding in *Simmons*, and we deny habeas relief on this issue.

-14-

2. **"The Code"**

On appeal, Mr. Warner presents another argument for a due process violation under *Simmons*. As previously noted, the trial court told jurors they "ha[d] all of the law and evidence necessary to reach a verdict." ROA, Vol. 1, Pt. 2 at 313. But two days earlier, at the close of the trial's guilt phase, the court gave jurors the following oral instruction:

> If you have a question, write it down. . . . I'll answer what I can. A lot of questions I can answer now that I could not until a few years ago, but I'm going to give you *the code*.
> If you ask me a question and you get an answer back that says *you have all the law and evidence necessary to reach a verdict*, what that means is [1] you've heard the evidence that you decide, okay, [2] you've got a copy of the instructions and look at the instructions, or [3] *you're asking me something that I'm not by law allowed to answer*, okay.
> I'll answer what I can, but if you get an answer back that says that, think about it. *Is it in the evidence, is it in here, or should we be talking about it.* Okay?

Trial Transcript, June 23, 2003, Vol. VI at 1250 (emphases added).

From this, Mr. Warner contends that the trial court used "the code"—"[y]ou have all of the law and evidence necessary to reach a verdict"—in response to the jury's life-without-parole question. He argues that the court's earlier oral instruction explained that "the code" meant any of three things: (1) the answer was in the evidence, (2) the answer was in the instructions, or (3) "should we be talking about it[?]"[5] In Mr. Warner's view,

_____

[5] To be clear, Mr. Warner argues that the trial court responded to the jury's life-without-parole question with "the code" and that the earlier oral instruction informed the jury of the various meanings of "the code."

there is a reasonable likelihood that jurors interpreted the trial court's use of "the code" as suggesting the third option and concluded they should not consider whether Mr. Warner could be released if sentenced to life without parole. Therefore, Mr. Warner insists, his case is "materially indistinguishable" from *Simmons* and cases where this court has found due process violations. *See* Aplt. Br. at 38; *see also Mollett*, 348 F.3d at 916; *Johnson*, 254 F.3d at 1166-67.

This court granted Mr. Warner a COA on the issue of whether the "trial court's response to the jury's request for information regarding the meaning of life without parole properly clarif[ied] the jury's confusion." Case Management Order at 1 (Nov. 8, 2011). We view this COA grant as broad enough to encompass Mr. Warner's "code" argument.

But Mr. Warner's argument presents procedural complications. The State contends that Mr. Warner failed to exhaust the "code" argument in state court and waived it in federal district court by failing to present it as part of his *Simmons* claim. Section 2254 requires applicants to exhaust all remedies available in state court before filing a habeas corpus application. 28 U.S.C. § 2254(b)(1)(A). In addition, we have declined to address arguments that a habeas petitioner failed to raise in the district court. *See Parker v. Scott*, 394 F.3d 1302, 1307 (10th Cir. 2005).

Nevertheless, § 2254 allows us to deny Mr. Warner's application on the merits notwithstanding a failure to exhaust. 28 U.S.C. § 2254(b)(2). And although we generally do not consider arguments on appeal that were not raised in the district court, "[w]hether

-16-

to address the argument despite the litigant's failure to raise it below is subject to this court's discretion based on the circumstances of the individual case." *United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007); *see also id.* ("This court has characterized its willingness to exercise its discretion to hear issues not raised below "only in the most unusual circumstances." (quoting *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993)). We exercise our discretion in the unusual circumstances of this death penalty appeal to deny Mr. Warner's argument on the merits.[6]

Mr. Warner argues the trial court's use of "the code" likely led jurors to think they should not consider parole eligibility, thus violating his due process rights under *Simmons*. We disagree.

In response to the jury's life-without-parole question, the trial court said the jury had "all of the law and evidence necessary to reach a verdict." ROA, Vol. 1, Pt. 2 at 313. Its oral instruction two days earlier at a separate trial phase informed the jury that this response was "the code" and meant (1) "you've heard the evidence that you [need to] decide," (2) "you've got a copy of the instructions and look at the instructions," or (3) "you're asking me something I'm not by law allowed to answer." Trial Transcript, June 23, 2008, Vol. VI at 1250.

In *Littlejohn v. Trammell*, the habeas petitioner asserted a nearly identical "code" claim involving these three options. There, the trial judge responded to the jury's

---

[6] The State acknowledges that the "code" argument is "presumably stronger" than Mr. Warner's arguments in the district court. See Aplee. Br. at 16.

question about parole by saying, "[Y]ou have all the law and evidence necessary to reach a verdict," and had separately informed jurors that this response meant the answer to their question was (1) in the instructions, (2) in the evidence, or (3) something "that's inappropriate for [the court] to answer." 704 F.3d at 829. We held that, even assuming the jury interpreted the trial court's use of "the code" to mean the third option, there was no *Simmons* violation:

> We believe . . . that the trial judge's response simply reinforced the plain meaning of the otherwise permissible instructions. The response said nothing—by its precise terms or by its substance—about the removal from the jury's sentencing consideration of parole eligibility as a permissible factor. At worst, it suggested that it may be inappropriate for *the judge* to answer a question, which conceivably, in context, could be a question about parole. The response did not reasonably suggest to the jury that the question of parole eligibility rested elsewhere than in its hands, or that a decision to recommend life without the possibility of parole would cause the sentence to be placed in the hands of another, or otherwise permit Mr. Littlejohn to be released. This does not bring Mr. Littlejohn's case within the stable of our decisions finding due process violations where "the trial court informs the jury that it is not to consider the issue of whether the defendant is parole ineligible." *Welch*, 639 F.3d at 1005.

704 F.3d at 829 (citations omitted).

As in *Littlejohn v. Trammell*, we conclude that Mr. Warner's due process rights were not violated if the trial court's use of "the code" may have led jurors to believe that the answer to their question was in the evidence, in the instructions, or something the trial court could not discuss.

Mr. Warner argues his "code" claim is distinguishable from the one in *Littlejohn v. Trammell*. He focuses on a comment the trial court made after laying out the three

-18-

possible meanings of "the code." Shortly after telling jurors that "the code" meant any of three things—the answer was in the evidence, in the instructions, or something the court could not discuss—the trial court added that if jurors received "the code," they should ask, "Is it in the evidence, is it in [the instructions], or *should we be talking about it*[?]" Trial Transcript, June 23, 2008, Vol. VI at 1250 (emphasis added). Mr. Warner focuses on the last phrase and argues that the trial court's use of "the code" likely led jurors to think they should not be talking about parole.

The parties agree that the proper standard for this issue is whether there is a reasonable likelihood that the jury construed the trial court's use of "the code" and its explanation of "the code" in the earlier oral instruction in a way that violates Mr. Warner's due process rights under *Simmons*. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("[I]n reviewing an ambiguous instruction . . . we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." (quotations omitted)). Even assuming the jury remembered the oral instruction made two days earlier at a separate phase of trial, we conclude there is no such reasonable likelihood.

First, the trial court's comment that the jury should ask itself, "Is it in the evidence, is it in [the instructions], or should we be talking about it[?]" came immediately after, and was parallel to, the court's explanation of the meaning of "the code": (1) "you've heard the evidence that you [need to] decide," (2) "you've got a copy of the instructions and look at the instructions," or (3) "you're asking me something I'm not by

-19-

law allowed to answer." Trial Transcript, June 23, 2008, Vol. VI at 1250. Although Mr. Warner insists that jurors likely took "should we be talking about it[?]" to mean that parole was not for their consideration, this ignores the rest of the trial court's oral instruction. In context, "should we be talking about it[?]" appears to be shorthand for the third meaning of "the code"—"you're asking me something I'm not by law allowed to answer."

We conclude that the trial court's "should we be talking about it[?]" comment was a reference to its more explicit explanation that "the code" could mean that the court was not by law allowed to answer the jury's question. And as discussed earlier in this opinion and in *Littlejohn v. Trammell*, 704 F.3d at 829, a court's response that it cannot answer the jury's life-without-parole question does not violate a defendant's due process rights under *Simmons*.

Second, Mr. Warner assumes that the jury did not take the court's use of "the code" to mean one of the other options, particularly that the answer was in the instructions. He argues that "[t]he instructions contained only the list of three punishment options that had produced the jury's question in the first place, so the jury could not reasonably have concluded that the answer was in the instructions." Aplt. Reply Br. at 10.

But it does not follow that, because jurors asked whether Mr. Warner could ever be released if sentenced to life without parole, they could not have interpreted the court's use of "the code" as referring them back to the instructions. By its terms, "the code"

referred jurors to "the *law* and evidence" before them. ROA, Vol. 1, Pt. 2 at 313 (emphasis added). The guilt phase oral instruction explaining "the code" twice told jurors to look to the instructions before suggesting that they ask themselves "should we be talking about it[?]" And although jurors may have been unsure whether Mr. Warner could be released if sentenced to life without parole, it is reasonable to conclude that further review of the instructions would have answered their question. Jurors were given the option of sentencing Mr. Warner to (1) death, (2) "imprisonment for life *without the possibility of parole*," or (3) "imprisonment for life *with the possibility of parole*." OCCA Original Record, Vol. VI at 1066 (emphases added). It is reasonable to conclude that, upon further consulting the instructions, jurors recognized the differences between the two life imprisonment options rather than believing their only sentencing options were death or a limited period of incarceration.

Third, Mr. Warner compares the trial court's use of "the code" to the trial courts' responses in *Simmons*, *Mollett*, and *Johnson*, all of which found due process violations. But in those cases, the trial courts explicitly informed jurors they were not to consider parole eligibility.

In *Simmons*, the trial court responded to the jury's question about parole eligibility by saying, "You are instructed not to consider parole or parole eligibility in reaching your verdict. Do not consider parole or parole eligibility. That is not a proper issue for your consideration." 512 U.S. at 160. In *Mollett*, this court found a due process violation where the trial court told jurors that "[m]atters of parole are beyond the [purview] of the

-21-

jury or the court to consider." 348 F.3d at 908. Likewise, the trial court in *Johnson* responded to the jury's parole question by saying that "[i]t is inappropriate for you to consider the question asked." 254 F.3d at 1166.

In arguing that his claim resembles those in *Simmons*, *Mollett*, and *Johnson*, Mr. Warner pieces together multiple inferences that his jury must have made. He argues that (1) the trial court told the jury that it had all the law and evidence necessary to reach a verdict; (2) the jury recalled that this response was "the code"; (3) the jury remembered that "the code" meant one of three things *and* that the court commented they should ask themselves "should we be talking about it[?]"; (4) the jury interpreted "the code" to mean "should we be talking about it[?]" rather than any of the other options the trial court laid out, including "you're asking me something that I'm not by law allowed to answer" and the answer is in the instructions; and (5) jurors interpreted "should we be talking about it[?]" to mean they should *not* be talking about the possibility of Mr. Warner's release. This argument relies on a chain of inferences and is in stark contrast to the "stable of our decisions," *Littlejohn v. Trammell*, 704 F.3d at 829, where jurors were told directly that they should not consider the issue of parole. We cannot conclude that there is a reasonable likelihood that Mr. Warner's jury engaged in this chain of reasoning or that the combination of the trial court's use of "the code" and its earlier oral instruction presented jurors with a false choice between sentencing Mr. Warner to death or a limited period of incarceration.

-22-

## III. **CONCLUSION**

For the foregoing reasons, we affirm the district court's denial of Mr. Warner's

§ 2254 application.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge